**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PATRICK SANTORO and JESSICA LANDIS,**<br>**Plaintiffs,**<br>**v.**<br><br>**TOWER HEALTH and META PLATFORMS, INC.,**<br>**Defendants.** | **Case No. 22-cv-4580-JFM**<br><br>**JURY TRIAL DEMANDED** |

## AMENDED CLASS ACTION COMPLAINT

Patrick Santoro and Jessica Landis ("Plaintiffs"), individually and for all others similarly-situated, by and through their undersigned counsel, bring this action against Tower Health ("Tower Health") and Meta Platforms, Inc. ("Meta") (collectively, "Defendants"), alleging as follows:

## NATURE OF THE ACTION

1. The Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996) and Pennsylvania's law relating to the confidentiality of medical records, 28 Pa. Code § 115.27, both prohibit healthcare providers from sharing patients' health care information, medical records, and related information with third parties except as needed for a patient's treatment, payment, or with their consent. These laws give patients a reasonable expectation of privacy in communications with healthcare providers relating to their medical conditions and treatment, because this information may not be disclosed outside the healthcare setting without notice and consent.

2. The Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, *et seq.*, and the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, *et seq.*, protect electronic data when it is communicated, while it is in transit, and when it is stored. These laws give patients a

reasonable expectation of privacy when they engage in electronic communications with their doctors by assuring their personal health information will remain confidential and secure.

3. Plaintiffs have brought this action to redress Defendants' highly-offensive practice of: placing computer code on its website, *www.towerhealth.org*, and the MyTowerHealth online portal ("Tower Health's web properties") to intercept the content of all communications made between Tower Health's patients and their doctors and medical office staff about those patients' medical symptoms, conditions, and concerns, medical appointments, medical tests and test results, medical visit notes, medications and treatments, health insurance and medical bills ("personally-identifiable patient health information"); transmitting all of the content in these communications to Meta; and allowing Meta to use this information to build-out its Facebook user profiles, generate targeted social media advertising, and engage in other commercial purposes that financially benefitted Tower Health and Meta, all without giving notice of these activities to Tower Health's patients or receiving their written consent.

## PARTIES

4. Patrick Santoro is an adult person who resides in the Commonwealth of Pennsylvania. Mr. Santoro has been a patient of Tower Health and has used Tower Health's web properties since before 2018. Mr. Santoro opened a Facebook account before 2018 and has continuously maintained this account to the present.

5. Jessica Landis is an adult person who resides in the Commonwealth of Pennsylvania. Ms. Landis has been a patient of Tower Health and has used Tower Health's web properties since before 2018. Ms. Landis opened a Facebook account before 2018 and has continuously maintained this account to the present.

6. Tower Health is a regional, integrated healthcare provider/payer system based in West Reading, Pennsylvania that consists of Reading Hospital, Chestnut Hill Hospital,

Phoenixville Hospital, Pottstown Hospital, St. Christopher's Hospital for Children, Reading Hospital Rehabilitation at Wyomissing, Reading Hospital School of Health Sciences, home healthcare services provided by Tower Health at Home and a network of 27 urgent care facilities. Tower encourages its patients, which number in the thousands, to use and communicate with their medical providers through the Tower Health web properties.

7. Meta is a Delaware corporation and global technology conglomerate with its principal place of business in Menlo Park, California. Meta's business includes operation of the Facebook, Instagram and WhatsApp social media sites and related applications.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over the claims that arise under the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq*. and the Stored Communications Act, 18 U.S.C. § 2701, *et seq*.

9. This Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), which, under the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453 and 1711-15 ("CAFA"), expressly provides federal courts with jurisdiction over any class action in which: the proposed class includes at least 100 members; any member of the class is a citizen of a state and any defendant is a citizen or subject of a foreign state; and the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do business in, and are subject to, personal jurisdiction in this District. Venue is also proper in this District, because a substantial part of the events or omissions giving rise to the claim occurred in, and emanated from, this District.

## BACKGROUND FACTS

11. A Meta Pixel is a snippet of code that businesses can insert on the "back end" of their websites to collect information about what users do on the website, what the website does in response, and capture substantive information from users' interactions with the website.

12. Website owners identify the events and communications they want to capture, Meta writes the code that tells the Meta Pixels what to do and sends the code to the website owner to be incorporated into its website. Once installed, the Meta Pixels will automatically capture the specified information and send this information to Meta.

13. Upon receiving the captured information, Meta reviews and uses this information for commercial purposes, like building-out its user profiles and selling targeted advertisements. Meta also returns some or all the captured information, along with analysis of this information, to the website owner for its own commercial purposes, like understanding how people use its site and determining what ads users see online.

14. When a person opens a Facebook account, they accept its Terms, Data Policy, and Cookie Policy *via* a checkbox on the Sign-Up page, *https://www.facebook.com*, and create their Facebook ID, the unique, persistent identifier assigned to each user. Facebook's Data Policy requires businesses that use Meta Pixels "to have lawful rights to collect, use, and share your data before providing any data to [Facebook]." *See* Facebook Data Policy, *https://www.facebook.com/privacy/policy/version/20220104/*.

15. Instead of taking proactive steps to verify that businesses using Meta Pixels obtain the required consent, Meta uses an "honor system" under which Meta assumes these businesses "represent and warrant that [they have] provided robust and sufficient prominent notice to users regarding the Business Tool Data collection, sharing, and usage." *See* Facebook Business Tools Terms, *https://www.facebook.com/legal/terms/businesstools.*

16. To foster its provision of medical care and support its business, Tower Health's web properties enable patients to engage in communications with their doctors and medical office staff about a wide range of personal, private healthcare information, including: their medical symptoms, conditions, and concerns, their healthcare appointments, their medical tests and test results, their doctors' visit notes, their medications, prescriptions, and treatments, their health insurance information, and their medical bills.

17. Tower Health's Patient Rights & Responsibilities advises patients that they: "have the right to keep [their] medical record and other healthcare information confidential," "have the right to personal privacy," and "have the right to receive care in a safe setting and to be free from all forms of abuse, harassment, neglect, or mistreatment." *See* Tower Patient Rights & Responsibilities, *https://towerhealth.org/locations/reading-hospital/patients/patient-resources/patient-rights-responsibilities*.

18. The Tower Health Notice of Privacy Practices that applies to all its healthcare facilities and "and the physicians, licensed professionals, employees, contractors, volunteers, and trainees seeing and treating patients at each of these care settings," represents that "information about you and your health is personal [and] we are committed to protecting your health information." *See* Tower Health Notice of Privacy Practices *https://towerhealth.org/Notice-of-Privacy-Practices.*

19. The Tower Health Notice of Privacy Practices advises that the hospital is "Required by Law to: Make sure that health information that identifies you is kept private." *Id.*

20. The Tower Health Notice of Privacy Practices advises that: "Written authorization is required prior to using or disclosing your PHI for marketing activities that are supported by payments from third parties." *Id.*

21. Tower Health's Website Privacy Policy represents that Tower is "committed to protecting your online privacy" and that "Information that Tower Health collects on this website will not be sold or given to a third party and will be accessible only by Tower Health." *See* Tower Health Website Privacy Policy, *https://towerhealth.org/tower-health-website-privacy-policy.*

22. Notwithstanding these representations, Tower Health entered into an agreement with Meta to design Meta Pixels for Tower Health's web properties and install these Meta Pixels on Tower Health's web properties.

23. Tower Health identified the information it wanted to be intercepted from its web properties, which included all the personally-identifiable patient health information shared between Tower Health patients, doctors, and medical office staff.

24. Meta used this information to write computer code that caused the Meta Pixels, once installed on Tower Health's web properties, to intercept the identified information, which included all the personally-identifiable patient health information shared between Tower Health patients, doctors, and medical office staff.

25. Tower Health added Meta's computer code into the "back-end" of its web properties and, as planned, the Meta Pixels began to automatically intercept all the personally-identifiable patient health information shared between Tower Health patients, doctors, and medical office staff, including the contents of communications about medical symptoms, conditions, and concerns, healthcare appointments, medical tests and test results, doctors' visit notes, medications, prescriptions, and treatments, health insurance information, and medical bills.

26. Thereafter, the Meta Pixels began to automatically transmit this intercepted information to Meta to be used for commercial purposes like building more fulsome profiles of its users' preferences and traits, and selling more-targeted advertisements based on the personally-identifiable patient health information received from Tower Health. Meta also benefitted from

Tower Health's use of Meta Pixels on its web properties, because it gave Tower Health a greater incentive to advertise on Meta's social media platforms.

27. Meta also returned the intercepted personally-identifiable patient health information to Tower Health along with analysis that Tower Health used for its own commercial purposes like understanding how people use its web properties and determining what ads users of its web properties see when they are online. Tower Health also benefitted from installing the Meta Pixel because Meta paid it for access to the commercially-valuable, personally-identifiable patient health information intercepted from communications between Tower Health patients, doctors, and medical office staff.

28. Defendants are not the intended recipients of the personally-identifiable patient health information communicated between Tower Health's patients, doctors, and medical office staff and are not active participants in any of these communications.

29. Tower Health has not, at any time, notified Plaintiffs or the Class members that it is intercepting their communications with doctors and medical office staff on its web properties.

30. Tower Health has not, at any time, received consent from Plaintiffs or the Class members to intercept their communications with doctors and medical office staff on its web properties.

31. The Office of Civil Rights at the United States Department of Health and Human Services ("HHS") recently issued a release concerning online tracking technologies used by HIPAA-covered entities condemning the conduct alleged here. *See* HHS Press Release (Exhibit 1). In this Press Release, HHS concludes that: "HIPAA Rules apply when the information that regulated entities collect through tracking technologies or disclose to tracking technology vendors includes protected health information (PHI)" and expressly clarifies that HIPAA protects both authenticated (*i.e.*, patient portal) and unauthenticated (*i.e.*, public) pages. *Id.*

32. The HHS Press Release explains its conclusions that, in these circumstances, the protection of HIPAA Rules is necessary not only because tracking technologies on a regulated entity's user-authenticated webpages generally have access to PHI, including "an individual's IP address, medical record number, home or email addresses, dates of appointments… an individual's diagnosis and treatment information, prescription information, billing information, or other information within the portal," but also because "[t]racking technologies on a regulated entity's unauthenticated webpage that addresses specific symptoms or health conditions… or that permits individuals to search for doctors or schedule appointments," may have access to PHI when such tracking technologies collect information that identifies the individual. *Id.*

**FACTS RELATING TO THE NAMED PLAINTIFFS**

33. Before 2018, Mr. Santoro created an account on the MyTowerHealth online portal by entering his name, mailing address, date of birth, gender, phone number, e-mail address and abbreviated Social Security number, and answering questions from a third-party verification system.

34. Since 2018, Mr. Santoro has used Tower Health's web properties to communicate with his doctors and their medical office staff about personally-identifiable patient health information, including: his medical symptoms, conditions, and concerns, his healthcare appointments, his medical tests and test results, his doctors' visit notes, and his medications, prescriptions, and treatments, among other things.

35. Mr. Santoro did not use, or intend to use, Tower Health's web properties to share his personally-identifiable patient health information with Tower Health or Meta.

36. Tower Health never notified Mr. Santoro that it would intercept, or was intercepting, any aspect of his communications with his doctors or medical office staff about

personally-identifiable patient health information on its web properties, and Mr. Santoro never consented to Defendants intercepting any aspect of these communications.

37. Tower Health never notified Mr. Santoro that it would share any aspect of his communications with his doctors and medical office staff about personally-identifiable patient health information with Meta, and Mr. Santoro never consented to Tower Health sharing any aspect of these communications with Meta.

38. Tower Health never notified Mr. Santoro that it or Meta would put any aspect of his communications with his doctors and their medical office staff about personally-identifiable patient health information to any commercial purpose, and Mr. Santoro never consented to Defendants putting any aspect of these communications to any commercial purpose.

39. Nevertheless, since 2018, the Meta Pixel installed on Tower Health's web properties intercepted the entire contents of Mr. Santoro's communications with Tower Health doctors and medical office staff about his personally-identifiable patient health information, including: his medical symptoms, conditions, and concerns, his healthcare appointments, his medical tests and test results, his doctors' visit notes, and his medications, prescriptions, and treatments, among other things.

40. Tower Health never provided Mr. Santoro with any means to opt-out of the interception by Defendants, or the disclosure to Meta, of his communications with Tower Health doctors and medical office staff about his personally-identifiable patient health information on Tower Health's web properties.

41. Before 2018, Ms. Landis created an account on the MyTowerHealth online portal by entering her name, mailing address, date of birth, gender, phone number, e-mail address and abbreviated Social Security number, and answering questions from a third-party verification system.

42. Since 2018, Ms. Landis has used Tower Health's web properties to communicate with her doctors and their medical office staff about personally-identifiable patient health information, including: her medical symptoms, conditions, and concerns, her healthcare appointments, her medical tests and test results, her doctors' visit notes, and her medications, prescriptions, and treatments, among other things.

43. Ms. Landis did not use, or intend to use, Tower Health's web properties to share her personally-identifiable patient health information with Tower Health or Meta.

44. Tower Health never notified Ms. Landis that it would intercept, or was intercepting, any aspect of her communications with her doctors or medical office staff about personally-identifiable patient health information on its web properties, and Ms. Landis never consented to Defendants intercepting any aspect of these communications.

45. Tower Health never notified Ms. Landis that it would share any aspect of her communications with her doctors and their medical office staff about personally-identifiable patient health information with Meta, and Ms. Landis never consented to Tower Health sharing any aspect of these communications with Meta.

46. Tower Health never notified Ms. Landis that it or Meta would put any aspect of her communications with her doctors and medical office staff about personally-identifiable patient health information to any commercial purpose, and Ms. Landis never consented to Defendants putting any aspect of these communications to any commercial purpose.

47. Nevertheless, since 2018, the Meta Pixel installed on Tower Health's web properties intercepted the entire contents of Ms. Landis' communications with Tower Health doctors and medical office staff about her personally-identifiable patient health information, including: her medical symptoms, conditions, and concerns, her healthcare appointments, her

medical tests and test results, her doctors' visit notes, and her medications, prescriptions, and treatments, among other things.

48. Tower Health never provided Ms. Landis with any means to opt-out of the interception by Defendants, or the disclosure to Meta, of communications with her doctors and their medical office staff about her personally-identifiable patient health information on Tower Health's web properties.

## CLASS ACTION ALLEGATIONS

49. Plaintiffs bring this action as a class action under Federal Rules of Civil Procedure 23(a) and (b)(3) for:

> All patients who used Tower Health's web properties and had their personally-identifiable patient health information, including the contents of their communications with doctors and medical office staff, shared with Meta or used for commercial purposes without their notice or consent.

("the Class members").

50. This action is properly maintained as a class action under Fed. R. Civ. P. 23(a)(1), because the Class members are so numerous and geographically dispersed that their joinder would be impracticable. Plaintiffs believe that Defendants' business records will permit the identification of thousands of people meeting the Class definition.

51. This action is properly maintained as a class action under Fed. R. Civ. P. 23(a)(2), because there are many common questions of facts and law concerning and affecting the Class members, including:

a. Whether Tower Health had a duty to protect and refrain from disclosing the Class members' personally-identifiable patient health information;

b. Whether Tower Health intentionally disclosed, and Meta intentionally received, the Class members' personally-identifiable patient health information;

c. Whether the Class members consented to Tower Health's disclosure of their personally-identifiable patient health information to Meta; and

d. Whether the Class members are entitled to damages as a result of Defendants' conduct.

52. Plaintiffs also anticipate that Defendants will raise defenses common to the Class.

53. This action is properly maintained as a class action under Fed. R. Civ. P. 23(a)(3), because Plaintiffs' claims are typical of the claims belonging to the Class members. Plaintiffs and the Class members were harmed by the same wrongful conduct perpetrated by Defendants that caused their personally-identifiable patient health information to be intercepted and disclosed without notice or consent. As a result, Plaintiffs' claims are based on the same facts and legal theories as the Class members' claims.

54. This action is properly maintained as a class action under Fed. R. Civ. P. 23(a)(4), because Plaintiffs will fairly and adequately protect the interests of all the Class members, there are no known conflicts of interest between Plaintiffs and the Class members, and Plaintiffs have retained counsel experienced in the prosecution of complex litigation.

55. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3), because common questions of law and fact predominate over questions affecting the individual Class members, because a class action is superior to other available methods for the fair and efficient adjudication of these claims and because important public interests will be served by addressing the matter as a class action. Further, the prosecution of separate actions by the individual Class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and substantially impair the Class members' ability to protect their interests.

## COUNT I
**Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.***
**(Against both Defendants)**

56. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

57. The Class members' use of Tower Health's web properties constitutes an electronic communication under the ECPA. *See* 18 U.S.C. § 2510(12).

58. Tower Health's web properties are an "electronic communication service" under the ECPA. *See* 18 U.S.C § 2510(15).

59. Defendants have violated the ECPA by using Meta Pixels to intercept all the contents of electronic communications occurring between Plaintiffs and the Class members and their doctors and medical office staff on Tower Health's web properties despite knowing (or having reason to know) this information was being obtained through the unlawful interception of an electronic communication. *See* 18 U.S.C. §§ 2511 (1)(a) and (c)–(d).

60. Defendants have violated the ECPA by using Meta Pixels to intentionally disclose the contents of all the electronic communications occurring between Plaintiffs and the Class members and their doctors and medical office staff on Tower Health's web properties despite knowing (or having reason to know) this information was being obtained through the unlawful interception of an electronic communication. *Id*.

61. Defendants have violated the ECPA by intentionally using the contents of electronic communications occurring between Plaintiffs and the Class members and their doctors and medical office staff on Tower Health's web properties despite knowing (or having reason to know) these contents were obtained through the unlawful interception of an electronic communication. *Id*.

62. Defendants have violated the ECPA by intentionally divulging the contents of electronic communications occurring between Plaintiffs and the Class members and their doctors and medical office staff on Tower Health's web properties despite knowing (or having reason to know) these contents were captured while in transmission on Tower Health's web properties. *See* 18 U.S.C. § 2511 (3)(a).

63. The communications Defendants intercepted from Tower Health's web properties contained a wide range of personal, private healthcare information, including: information about Plaintiffs' and the Class members' medical symptoms, conditions, and concerns, medical appointments, medical tests and test results, doctors' visit notes, medications and treatments, and health insurance and medical bills.

64. Plaintiffs and the Class members have not used, or intended to use, Tower Health's web properties to communicate with, or share the contents of their personally-identifiable patient health information with, either Tower Health or Meta, meaning that Defendants were not parties to, or intended recipients of, these communications in any sense.

65. Defendants do not meet any of the exceptions to liability provided by 18 U.S.C. §§ 2511.

66. Any person whose electronic communication is intercepted in violation of ECPA has a private right of action under 18 U.S.C. §2520(a).

67. As a result of Defendants' violation of the ECPA, Plaintiffs are entitled to all damages available under 18 U.S.C. § 2520, including equitable or declaratory relief, compensatory and punitive damages, and attorney's fees and costs.

**COUNT II**
**Violation of the Stored Communications Act, 18 U.S.C. § 2701, *et seq.***
**(Against Meta only)**

68. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

69. Tower Health's web properties are a "facility through which an electronic communication service is provided" under the SCA.

70. Meta is an "entity providing an electronic communication service to the public" under the SCA. *See* 18 U.S.C. § 2702(a)(1).

71. Meta is an "entity providing remote communication service to the public" under the SCA. *See* 18 U.S.C. § 2702(a)(2).

72. Meta has violated the SCA by intentionally accessing Tower Health's web properties without authorization. *See* 18 U.S.C. § 2701(a)(1).

73. Meta has violated the SCA by intentionally exceeding an authorization to access Tower Health's web properties. *See* 18 U.S.C. § 2701(a)(2).

74. Meta has violated the SCA by knowingly divulging the content of communications while electronically stored on Tower Health's web properties. *See* 18 U.S.C. § 2701(a)(2).

75. Meta has violated the SCA by knowingly divulging the content of communications maintained on Tower Health's web properties that were received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from) its subscribers or customers. *See* 18 U.S.C. § 2701(a)(2)(A).

76. Meta has violated the SCA by knowingly receiving from Tower Health the content of communications maintained on Tower Health's web properties that were received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from) that it was not authorized to access for any purpose. *See* 18 U.S.C. § 2701(a)(2)(B).

77. Meta has violated the SCA for purposes of commercial advantage, malicious destruction or damage, private commercial gain and in furtherance of criminal and tortious acts in violation of the Constitution or laws of the United States and the Commonwealth of Pennsylvania. *See* 18 U.S.C. § 2701(b)(1).

78. Meta does not meet any of the exceptions to liability provided by 18 U.S.C. § 2701(c).

79. Any person "aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind" has a private right of action under 18 U.S.C. § 2707(a).

80. As a result of Defendants' violation of the SCA, Plaintiffs and the Class members are entitled to recover all available damages, including equitable relief, declaratory relief, statutory damages of at least $1,000 per person measured by the profit from Meta's violation of the Act, punitive damages, and attorney's fees and costs.

**COUNT III**
**Breach of Contract**
**(Against Meta only)**

81. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

82. Meta requires Facebook users to click a box indicating that, "By clicking Sign Up, you agree to our Terms, Data Policy and Cookies Policy." Such "click-wrap agreements" are valid contracts, binding on all parties.

83. The Facebook Terms, Facebook Data Policy, and Facebook Cookie Policy are binding on Facebook and its users.

84. The Facebook Data Policy promises users that Facebook "requires each of [Facebook's] partners to have lawful rights to collect, use and share your data before providing any data to [Facebook]."

85. Meta has breached these contractual promises by not requiring Tower Health, a healthcare provider partner, to provide notice and obtain consent from its patients before receiving their personally-identifiable patient health information, including the contents of communications between patients and their doctors and medical office staff, from Tower Health's web properties.

86. The personally-identifiable patient health information that Meta has obtained from the Class members through Tower Health's web properties in breach of these contractual promises

include both the "content" of the communications between patients, their doctors and medical office staff about medical symptoms, conditions, treatments, tests, test results, appointments and medical bills and the "characteristics" of these communications (*i.e.*, IP addresses, cookie identifiers, device identifiers and account numbers).

87. Plaintiffs and the Class members have suffered damages as a direct and proximate result of Meta's breach of contract in that:

> a. Meta's breach of contract has caused Plaintiffs and the Class members to suffer damages measured by the value Meta paid to Tower Health for access to the personally-identifiable patient health information intercepted from Tower Health's web properties ;
>
> b. Meta's breach of contract has caused Plaintiffs and the Class members to suffer damages measured by the value of the benefit it received from being able to use personally-identifiable patient health information intercepted from Tower Health's web properties to build more fulsome profiles of Plaintiffs' and the Class members' preferences and traits;
>
> c. Meta's breach of contract has caused Plaintiffs and the Class members to suffer damages measured by the value of the revenue it received from the sale of targeted advertisements based on personally-identifiable patient health information intercepted from Tower Health's web properties; and
>
> d. Meta's breach of contract has caused Plaintiffs and the Class members to suffer damages measured by the increased value of the revenue it received from Tower Health for advertisements placed on Meta's social media platforms following insertion of the Meta Pixels on Tower Health's web properties.

88. Meta's breach has proximately caused Plaintiffs' and the Class members' damages, because its unauthorized interception and transmission of their personally-identifiable patient health information to Meta, and subsequent commercial use of this information, in contravention of its contractual promises, gave rise to their claimed damages.

**<u>COUNT IV</u>**
**Negligence**
**(Against Tower Health only)**

89. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

90. Plaintiffs and the Class members have received healthcare services from doctors employed by Tower Health.

91. By virtue of its employment relationship with its doctors, Tower Health has assumed a duty to keep Plaintiffs' and the Class members' personally-identifiable patient health information confidential.

92. Tower Health assumed a duty to keep Plaintiffs' and the Class members' personally-identifiable patient health information confidential by issuing Patient Rights & Responsibilities that assured its patients they: "have the right to keep [their] medical record and other healthcare information confidential," "have the right to personal privacy," and "have the right to receive care in a safe setting and to be free from all forms of abuse, harassment, neglect, or mistreatment." *See* Tower Patient Rights & Responsibilities, *https://towerhealth.org/locations/reading-hospital/patients/patient-resources/patient-rights-responsibilities.*

93. Tower Health assumed a duty to keep Plaintiffs' and the Class members' personally-identifiable patient health information confidential by issuing a Notice of Privacy Practices that represents: "information about you and your health is personal [and] we are committed to protecting your health information." *See* Tower Health Notice of Privacy Practices https://towerhealth.org/Notice-of-Privacy-Practices.

94. Tower Health assumed a duty to keep Plaintiffs' and the Class members' personally-identifiable patient health information confidential by issuing a Notice of Privacy Practices that represents the hospital is "Required by Law to: Make sure that health information that identifies you is kept private." *Id.*

95. Tower Health assumed a duty to keep Plaintiffs' and the Class members' personally-identifiable patient health information confidential by issuing a Notice of Privacy

Practices that represents: "Written authorization is required prior to using or disclosing your PHI for marketing activities that are supported by payments from third parties." *Id*.

96. Tower Health assumed a duty to keep Plaintiffs' and the Class members' personally-identifiable patient health information confidential by issuing a Website Privacy Policy representing that it is "committed to protecting your online privacy" and that "Information that Tower Health collects on this website will not be sold or given to a third party and will be accessible only by Tower Health." *See Tower Health Website Privacy Policy, https://tower health.org/tower-health-website-privacy-policy.*

97. Tower Health has a duty not to disclose Plaintiffs' and the Class members' medical records for marketing purposes without their express written authorization under multiple federal laws. *See, e.g.*, 42 U.S.C. § 1320; 45 C.F.R. §§ 164.501; 164.508(a)(3), 164.514(b)(2)(i).

98. Tower Health has a duty under Pennsylvania law to keep Plaintiffs' and the Class members' medical records confidential and private absent express written authorization. *See, e.g.*, 28 Pa. Code § 115.27.

99. Tower Health has breached its duties of care by intentionally inserting Meta Pixels on its web properties to intercept Plaintiffs' and the Class members' personally-identifiable patient health information (including communications with their doctors and medical office staff about a wide range of personal, private healthcare information, including: their medical symptoms, conditions, and concerns, their healthcare appointments, their medical tests and test results, their doctors' visit notes, their medications, prescriptions, and treatments, their health insurance information, and their medical bills), transmit this information to Meta, and enable Defendants' commercial use of this information.

100. Tower Health is a third party with respect to its interception, transmission and commercial use of Plaintiffs' and the Class members' communications with their doctors and

medical office staff about personally-identifiable patient health information, because Tower Health was not an intended recipient of, or participant in, these communications.

101. Plaintiffs and the Class members have suffered damages as a direct and proximate result of Tower Health's breach of its duty to duty to keep Plaintiffs' and the Class members' personally-identifiable patient health information confidential in that:

a. Tower Health derived substantial revenue from selling or licensing Plaintiffs' and the Class members' personally-identifiable patient health information to Meta and/or sharing this information with Meta, without providing any part of this revenue to Plaintiffs or the Class members;

b. Tower Health used Plaintiffs' and the Class members' personally-identifiable patient health information for its own commercial benefit, such as understanding how people use Tower Health's web properties and determining what ads users see online, without providing the value of these benefits to Plaintiffs or the Class members;

c. Tower Health has failed to provide Plaintiffs and the Class members with the full value of the medical services for which they paid, which included a duty to maintain the confidentiality of their patient information; and

d. Tower Health's actions have exposed personal, private healthcare information, including personally-identifiable patient health information, that Plaintiffs and the Class members intended to keep private, causing them embarrassment, humiliation, emotional harm, and distress.

102. Tower Health's breach has proximately caused Plaintiffs' and the Class members' damages, because its unauthorized interception and transmission of their personally-identifiable patient health information to Meta, and subsequent commercial use of this information, in contravention of all its duties, gave rise to their claimed damages.

## COUNT V
### Invasion of Privacy - Intrusion Upon Seclusion
### (Against Tower Health only)

103. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

104. The common-law tort of intrusion protects others from intentionally intruding into a communication or matter as to which another has a reasonable expectation of privacy.

105. Tower Health has intentionally intruded into communications between Plaintiffs and the Class members, on one hand, and their doctors and medical office staff, on the other. These communications concerned Plaintiffs' and the Class members' personally-identifiable patient health information, including: their medical symptoms, conditions, and concerns, their healthcare appointments, their medical tests and test results, their doctors' visit notes, their medications, prescriptions, and treatments, their health insurance information, and their medical bills.

106. Plaintiffs and the Class members have a reasonable expectation of privacy in these communications, because doctor-patient communications inherently contain details of patients' physical and medical conditions that are universally understood to be personal, private. and deserving of the strictest confidentiality.

107. Plaintiffs and the Class members have a reasonable expectation of privacy in these communications, because they involved personally-identifiable patient health information that Tower Health was under a legal duty to shield from disclosure.

108. Plaintiffs and the Class members have a reasonable expectation of privacy in these communications, because Tower Health's Patient Rights & Responsibilities assure patients they: "have the right to keep [their] medical record and other healthcare information confidential," "have the right to personal privacy," and "have the right to receive care in a safe setting and to be free from all forms of abuse, harassment, neglect, or mistreatment." See Tower Patient Rights & Responsibilities, *https://towerhealth.org/locations/reading-hospital/patients/patient-resources/patient-rights-responsibilities.*

109. Plaintiffs and the Class members have a reasonable expectation of privacy in these communications, because Tower Health's Notice of Privacy Practices advises patients that: "information about you and your health is personal [and] we are committed to protecting your

health information." *See Tower Health Notice of Privacy Practices https://towerhealth. org/Notice-of-Privacy-Practices.*

110. Plaintiffs and the Class members have a reasonable expectation of privacy in these communications, because Tower Health's Notice of Privacy Practices represents to patients that the hospital is "Required by Law to: Make sure that health information that identifies you is kept private." *Id*.

111. Plaintiffs and the Class members have a reasonable expectation of privacy in these communications, because Tower Health's Notice of Privacy Practices represents that: "Written authorization is required prior to using or disclosing your PHI for marketing activities that are supported by payments from third parties." *Id*.

112. Plaintiffs and the Class members have a reasonable expectation of privacy in these communications, because Tower Health's Website Privacy Policy represents that it is "committed to protecting your online privacy" and that "Information that Tower Health collects on this website will not be sold or given to a third party and will be accessible only by Tower Health." *See Tower Health Website Privacy Policy, https://tower health.org/tower-health-website-privacy-policy.*

113. Tower Health has intruded into Plaintiff's and the Class members' communications with their doctors in a manner that is highly offensive to a reasonable person, because it was not an intended recipient of, or a participant in, these communications.

114. Tower Health has intruded into Plaintiff's and the Class members' communications with their doctors in a manner that is highly offensive to a reasonable person, because the information it intercepted is universally understood to be personal, private, and deserving of confidential treatment.

115. Tower Health has intruded into Plaintiff's and the Class members' communications with their doctors in a manner that is highly offensive to a reasonable person, because it operates

a healthcare system founded upon the principle that patients' communications with their healthcare providers must be kept private and confidential so doctors can make fully-informed treatment decisions to provide the most directed, appropriate care.

116. Tower Health has intruded into Plaintiff's and the Class members' communications with their doctors in a manner that is highly offensive to a reasonable person, by violating its own repeated representations that it would keep personally-identifiable patient health information private, confidential, secure, and protected against unauthorized use without patients' written permission.

117. Tower Health has intruded into Plaintiff's and the Class members' communications with their doctors in a manner that is highly offensive to a reasonable person, by failing to provide notice to Plaintiffs or the Class members that it would intercept, transmit, and put their personally-identifiable patient health information to commercial use.

118. Tower Health has intruded into Plaintiff's and the Class members' communications with their doctors in a manner that is highly offensive to a reasonable person, by failing to secure Plaintiffs' or the Class members' consent to intercept, transmit, or put their personally-identifiable patient health information to commercial use.

119. Tower Health has intruded into Plaintiff's and the Class members' communications with their doctors in a manner that is highly offensive to a reasonable person, by putting Plaintiffs' and the Class members' personally-identifiable patient health information to multiple commercial uses and receiving a substantial financial benefit from doing so without sharing any part of this benefit with Plaintiffs or the Class members.

120. Plaintiffs and the Class members have suffered damages as a direct and proximate result of Tower Health's invasion of privacy and intrusion upon their seclusion in that:

a. Learning that Tower Health has intruded upon, intercepted, transmitted, shared and used their personally-identifiable patient health information (including information about their medical symptoms, conditions, and concerns, their healthcare appointments, their medical tests and test results, their doctors' visit notes, their medications, prescriptions, and treatments, their health insurance information, and their medical bills) for commercial purposes has caused Plaintiffs and the Class members to suffer emotional distress;

b. Tower Health derived substantial revenue from selling or licensing Plaintiffs' and the Class members' personally-identifiable patient health information to Meta and/or sharing this information with Meta, without providing any part of this revenue to Plaintiffs or the Class members;

c. Tower Health used Plaintiffs' and the Class members' personally-identifiable patient health information for its own commercial benefit, such as understanding how people use Tower Health's web properties and determining what ads users see online, without providing the value of these benefits to Plaintiffs or the Class members; and

d. Tower Health has failed to provide Plaintiffs and the Class members with the full value of the medical services for which they paid, which included a duty to maintain the confidentiality of their patient information.

121. Tower Health's breach has proximately caused Plaintiffs' and the Class members' damages, because its unauthorized interception and transmission of their personally-identifiable patient health information to Meta, and subsequent commercial use of this information in contravention of all the duties pled herein, gave rise to their claimed damages.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully ask this Court for an Order:

a. Certifying this case as a class action, appointing Plaintiffs as Class Representatives, and appointing Stephan Zouras LLP as Class Counsel;

b. Entering judgment for Plaintiffs and the Class members on their ECPA claim and awarding all damages available under 18 U.S.C. § 2520, including equitable or declaratory relief, compensatory and punitive damages, and attorney's fees and costs;

c. Entering judgment for Plaintiffs and the Class members on their SCA claim and requiring Meta to pay all available damages, including equitable or declaratory relief, statutory damages of at least $1,000 per person measured by the

profit from Meta's violation of the Act, punitive damages, and attorney's fees and costs;

d. Entering judgment for Plaintiffs and the Class members on their breach of contract claim and requiring Meta to pay all available damages, including the value Meta received from being able to use personally-identifiable patient health information intercepted from Tower Health's web properties to build more fulsome profiles of Plaintiffs' and the Class members' preferences and traits, and disgorgement of the profits it received from the sale of targeted advertisements based on personally-identifiable patient health information intercepted from Tower Health's web properties and the increased value of revenue it received from Tower Health for advertisements placed on Meta's social media platforms following insertion of the Meta Pixels on Tower Health's web properties ;

e. Entering judgment for Plaintiffs and the Class members on their negligence claim and requiring Tower Health to pay all available damages, including the value Tower Health received from selling or licensing Plaintiffs' and the Class members' personally-identifiable patient health information to Meta and/or sharing this information with Meta, and the value Tower Health received from using Plaintiffs' and the Class members' personally-identifiable patient health information for its own commercial benefit;

f. Entering judgment for Plaintiffs and the Class members on their intrusion upon seclusion claim and requiring Tower Health to pay all available damages, including injunctive relief requiring Tower Health to cease violating their privacy rights without their knowledge or consent and nominal damages of $100 per violation;

g. Awarding injunctive relief to Plaintiffs and the Class members that includes an order barring Defendants from any further interception, transmission, or commercial use of Plaintiffs' and the Class members' communications with their doctors and medical office staff on Tower Health's web properties absent express notice and informed consent;

h. Awarding pre- and post-judgment interest on all damages awarded;

i. Awarding recovery of Plaintiffs' reasonable attorneys' fees and reimbursement of their litigation expenses; and

j. Awarding such additional relief as justice requires.

## **JURY TRIAL DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully Submitted,

Dated: March 20, 2023

/s/ *David J. Cohen*
David J. Cohen
**STEPHAN ZOURAS, LLP**
604 Spruce Street
Philadelphia, PA 19106
(215) 873-4836
*dcohen@stephanzouras.com*

Ryan F. Stephan (admitted *pro hac vice*)
James B. Zouras (admitted *pro hac vice*)
Teresa M. Becvar (admitted *pro hac vice*)
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza, Suite 2150
Chicago, IL 60606
(312) 233-1550
*rstephan@stephanzouras.com*
*jzouras@stephanzouras.com*
*tbecvar@stephanzouras.com*

*Attorneys for Plaintiffs*