**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PATRICK SANTORO and JESSICA LANDIS,** **Plaintiffs,** v. **TOWER HEALTH,** **Defendant.** | **Case No. 22-cv-4580-JFM** **JURY TRIAL DEMANDED** |

**SECOND AMENDED CLASS ACTION COMPLAINT**

Patrick Santoro and Jessica Landis ("Plaintiffs"), individually and for all others similarly-situated, submit this Second Amended Complaint against Tower Health ("Tower Health" or "Defendant"), alleging as follows:

**NATURE OF THE ACTION**

1. The Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996) and Pennsylvania's law relating to the confidentiality of medical records, 28 Pa. Code § 115.27, both prohibit healthcare providers from sharing health care information, medical records, and related information with third parties except as needed for treatment, payment, or with their consent. These laws provide a reasonable expectation of privacy in communications with healthcare providers relating to their medical conditions and treatment, because this information may not be disclosed outside the healthcare setting without notice and consent.

2. The Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, *et seq.*, protects electronic data when it is communicated, while it is in transit, and when it is stored. This law provides a reasonable expectation of privacy when people engage in electronic communications with their healthcare providers by assuring their personal health information will remain confidential and secure.

3. Plaintiffs have brought this action to redress Defendant's highly-offensive practice of placing computer code on the Tower Health website that intercepts the characteristics and contents of communications about past, present, and future medical conditions, concerns, symptoms, appointments, providers, treatments, medications, bills, and insurance ("individually-identifiable health information"), transmitting this data to Meta for analysis and, thereafter, putting this data to commercial uses benefitting both Defendant and Meta without providing notice to, or receiving consent from the users of Tower Health's website.

**PARTIES**

4. Patrick Santoro is an adult person who resides in the Commonwealth of Pennsylvania. Mr. Santoro has been a patient of Tower Health and has used the Tower Health website to facilitate and inform his medical care and treatment decisions since before 2018. Mr. Santoro opened a Facebook account before 2018 and has continuously maintained this account to the present.

5. Jessica Landis is an adult person who resides in the Commonwealth of Pennsylvania. Ms. Landis has been a patient of Tower Health and has used the Tower Health website to facilitate and inform her medical care and treatment decisions since before 2018. Ms. Landis opened a Facebook account before 2018 and has continuously maintained this account to the present.

6. Tower Health is a regional, integrated healthcare provider/payer system based in West Reading, Pennsylvania that consists of Reading Hospital, Chestnut Hill Hospital, Phoenixville Hospital, Pottstown Hospital, St. Christopher's Hospital for Children, Reading Hospital Rehabilitation at Wyomissing, Reading Hospital School of Health Sciences, home healthcare services provided by Tower Health at Home and a network of 27 urgent care facilities.

Tower encourages its patients, which number in the thousands, and members of the general public to provide and receive individually-identifiable health information through its website.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over the claims that arise under the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq*.

8. This Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), which, under the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453 and 1711-15 ("CAFA"), expressly provides federal courts with jurisdiction over any class action in which: the proposed class includes at least 100 members; any member of the class is a citizen of a state and any defendant is a citizen or subject of a foreign state; and the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does business in, and are subject to, personal jurisdiction in this District. Venue is also proper in this District, because a substantial part of the events or omissions giving rise to the claim occurred in, and emanated from, this District.

## BACKGROUND FACTS

10. A Meta Pixel is a snippet of code that a business can insert on the "back end" of its website to collect data about which pages users view, which links users click, what content users access, how much time users spend on each page, and how the website responds to users' inquiries.

11. A business intending to add a Meta Pixel to its website identifies the data it wants to intercept, Meta writes the code to tell the Meta Pixel what to do, and Meta sends this code to the business to be added into the "back end" of its website. Once the business installs the Meta Pixel, it begins to intercept the specified data and send it to Meta.

12. Meta analyzes the intercepted data and uses it for commercial purposes like building-out its user profiles and selling targeted advertisements. Meta also returns the intercepted data and analysis to the business for its own commercial purposes, like understanding how people use its website and determining what ads its users see.

13. When a person opens a Facebook account, they accept Meta's Terms, Data Policy, and Cookie Policy *via* a checkbox on the Sign-Up page, *https://www.facebook.com*, and create their Facebook ID, the unique, persistent identifier assigned to each user. Facebook's Data Policy requires businesses that use Meta Pixels "to have lawful rights to collect, use, and share your data before providing any data to [Facebook]." *See* Facebook Data Policy, *https://www.facebook.com/privacy/policy/version/20220104/*.

14. Moreover, Meta's policies expressly provide that businesses using Meta Pixels will not share data that they "know or reasonably should know... includes health, financial information or other categories of sensitive information (including any information defined as sensitive under applicable laws, regulations and applicable industry guidelines)." *See* Facebook Business Tools, Term 1(h), *https://www.facebook.com/legal/terms/businesstools*; Meta Commercial Term 3, *https://www.facebook.com/legal/commercial_terms*.

15. Instead of taking proactive steps to verify that businesses using Meta Pixels obtain the required consent, Meta uses an "honor system" under which it assumes these businesses "represent and warrant that [they have] provided robust and sufficient prominent notice to users regarding the Business Tool Data collection, sharing, and usage." *See* Facebook Business Tools Terms, *https://www.facebook.com/legal/terms/businesstools.*

16. To attract patients, enable their pursuit of medical care, foster its provision of that medical care, and support its business, the Tower Health website enables Tower Health patients

and the general public to engage in a wide array of communications concerning their individually-identifiable health information.

17. With respect to individually-identifiable health information, Tower Health's Patient Rights & Responsibilities advise that patients: "have the right to keep [their] medical record and other healthcare information confidential," "have the right to personal privacy," and "have the right to receive care in a safe setting and to be free from all forms of abuse, harassment, neglect, or mistreatment." *See* Tower Patient Rights & Responsibilities, *https://towerhealth.org/locations/reading-hospital/patients/patient-resources/patient-rights-responsibilities*.

18. With respect to individually-identifiable health information, Tower Health's Notice of Privacy Practices represents that "information about you and your health is personal [and] we are committed to protecting your health information." *See* Tower Health Notice of Privacy Practices *https://towerhealth.org/Notice-of-Privacy-Practices.*

19. With respect to individually-identifiable health information, Tower Health's Notice of Privacy Practices advises that it is "Required by Law to: Make sure that health information that identifies you is kept private." *Id.*

20. With respect to individually-identifiable health information, Tower Health's Notice of Privacy Practices advises that: "Written authorization is required prior to using or disclosing your PHI for marketing activities that are supported by payments from third parties." *Id.*

21. With respect to individually-identifiable health information, the Tower Health Confidentiality Information Agreement defines "confidential information" to include individuals' "Protected health information, (patient medical, financial, and demographic data)," and represents that "Unauthorized access, use, modification, or disclosure of Confidential Information is strictly prohibited." *See chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://towerhealth.org/*

*sites/default/files/pdfs/2021-06/Tower%20Health%20Confidentiality%20Information%20Agreement.pdf.*

22. With respect to individually-identifiable health information, Tower Health's Website Privacy Policy represents that Tower is "committed to protecting your online privacy" and that "Information that Tower Health collects on this website will not be sold or given to a third party and will be accessible only by Tower Health." *See* Tower Health Website Privacy Policy, *https://towerhealth.org/tower-health-website-privacy-policy.*

23. Notwithstanding all these representations, Tower Health designed Meta Pixels to capture both the "characteristics" of individuals' communications on the Tower Health website (*i.e.*, their IP addresses, Facebook ID, cookie identifiers, device identifiers and account numbers) and the "content" of these communications (*i.e.*, the URLs, buttons, links, pages, and tabs they view).

24. Notwithstanding all these representations, Tower Health installed Meta Pixels on its website and, thereafter, began to receive extensive individually-identifiable health information from everyone who visited the website, including Tower Health patients and the general public.

25. As an example, anyone who visits Tower Health's website and clicks on the "Services & Conditions" tab is directed to a page, *https://towerhealth.org/services*, showing 41 different treatment options, ranging from "Allergy & Immunology" to "Wound Care." Anyone who clicks the "Cancer Care" button is directed to a page, *https://towerhealth.org/services/cancer-care*, listing fifteen "Individualized cancer care services," each with a separate link. Selecting any of these links, like "Breast Cancer" directs to a new page, *https://towerhealth.Org/services/breast-cancer*, with more buttons linked to specific providers, treatments, and treatment locations. Anyone who clicks these buttons is directed to additional pages, like *https://towerhealth.org /services/medical-and-biologic-therapies*, that provide information about specific medical

conditions, treatment options, services, providers, locations, and clinical trials, many of which have additional links and buttons.

26. The Meta Pixel intercepts the "characteristics" and "content" of all communications on the Tower Health website and contemporaneously transmits this data to Meta, thereby revealing to Meta the exact links and pages website users clicked-on and viewed and disclosing their individually-identifiable health information (*i.e.*, about cancer care, breast cancer, chemotherapy treatment, and breast cancer clinical trials).

27. After receiving the individually-identifiable health information communicated from website users' computing devices to the Tower Health website, Meta analyzes and uses this information for its own commercial purposes that include building more fulsome profiles of its users' preferences and traits and selling more-targeted advertisements based on this information. Meta also receives an additional commercial benefit from Tower Health's use of Meta Pixels, namely that it provides Tower Health with a greater incentive to advertise on Meta's social media platforms.

28. After receiving the individually-identifiable health information communicated from website users' computing devices to the Tower Health website, Meta forwards this data, and its analysis of this data, to Tower Health. Tower Health then uses this data and analysis for its own commercial purposes that include understanding how people use its website and determining what ads people see on its website. Tower Health also receives an additional commercial benefit from using Meta Pixels, namely that Meta pays it for access to the commercially-valuable, individually-identifiable health information communicated on its website.

29. Meta is not an intended recipient of the individually-identifiable health information communicated on Tower Health's website, nor is it an active or disclosed participant in these communications.

30. Tower Health does not notify its website users that it is sending individually-identifiable health information communicated on its website to Meta.

31. Tower Health does not notify its website users that Meta is using the individually-identifiable health information they communicate on its website for its commercial purposes.

32. Tower Health does not notify its website users that it is using the individually-identifiable health information they communicate on its website for its own commercial purposes.

33. Meta has not secured any informed consent or written permission allowing it to use individually-identifiable health information communicated on Tower Health's website for commercial purposes.

34. Tower Health has not secured any informed consent or written permission allowing it to share individually-identifiable health information communicated on its website with Meta.

35. Tower Health has not secured any informed consent or written permission allowing it to use individually-identifiable health information communicated on its website for its own commercial purposes.

36. The Office of Civil Rights at the United States Department of Health and Human Services ("HHS") recently issued a bulletin concerning online tracking technologies used by HIPAA-covered entities condemning the conduct alleged here. *See* HHS Bulletin (Exhibit 1).

37. The Bulletin's purpose is: "to highlight the obligation of [HIPAA]-covered entities and business associates… under the HIPPA [Privacy Rules] when using online tracking technologies." *Id.*

38. The HHS Bulletin does not change any existing rule, or impose any new obligation on HIPAA-covered entities. Instead, it reminds these entities of their long-standing obligations by referring to guidance and rules that have been in place for decades. *Id.* ("it has always been true that regulated entities may not impermissibly disclose PHI to tracking technology vendors").

39. The HHS Bulletin concludes that: "HIPAA Rules apply when the information that regulated entities collect through tracking technologies or disclose to tracking technology vendors includes protected health information" and expressly clarifies that HIPAA protects both authenticated (*i.e.*, patient portal) and unauthenticated (*i.e.*, public) pages. *Id.*

40. The HHS Bulletin explains that, in these circumstances, the protection of HIPAA Rules is necessary both because tracking technologies on a regulated entity's user-authenticated webpages generally have access to protected health information, including "an individual's IP address, medical record number, home or email addresses, dates of appointments… an individual's diagnosis and treatment information, prescription information, billing information, or other information within the portal," and because "[t]racking technologies on a regulated entity's unauthenticated webpage that addresses specific symptoms or health conditions… or that permits individuals to search for doctors or schedule appointments," may have access to protected health information when such tracking technologies collect information that identifies the individual. *Id.*

41. The HHS Bulletin also specifically reminds HIPAA-covered entities of their obligation to protect communications received from the general public on their websites "even if the individual does not have an existing relationship with the regulated entity and even if the IIHI, such as IP address or geographic location, does not include specific treatment or billing information like dates and types of health care services," because the information collected from these communications "connects the individual to the regulated entity (*i.e.*, it is indicative that the individual has received or will receive health care services or benefits from the covered entity), and thus relates to the individual's past, present, or future health or health care or payment for

care." *Id.*, *citing* January 25, 2013 Modifications to the HIPAA Privacy, Security, Enforcement, and Breach Notification Rules, 78 FR 5566, 5598.[1]

42. The HHS Bulletin and the 2013 Modifications to the HIPAA Privacy, Security, Enforcement, and Breach Notification Rules are consistent with all other HIPAA rules and regulations relating to the communications at issue in this action.

**FACTS RELATING TO THE NAMED PLAINTIFFS**

43. Since 2018, Mr. Santoro has used Tower Health's website to engage in communications that included individually-identifiable health information about his past, present, or future health conditions, including requests for information about specific Tower Health providers and locations, and information about specific health conditions, treatments, and medications.

44. Mr. Santoro did not use Tower Health's website to share his individually-identifiable health information with Meta, or to enable Meta or Tower Health to put this data to any commercial use.

45. Tower Health never notified Mr. Santoro that it would send individually-identifiable health information about his past, present, or future health conditions to Meta.

46. Tower Health never notified Mr. Santoro that either it or Meta would put individually-identifiable health information about his past, present, or future health conditions to their own commercial uses.

[1] "protected health information… may not necessarily include diagnosis-specific information, such as information about the treatment of an individual, and may be limited to demographic or other information not indicative of the type of health care services provided to an individual. If the information is tied to a covered entity, then it is protected health information by definition since it is indicative that the individual received health care services or benefits from the covered entity, and therefore it must be protected… in accordance with the HIPAA rules."

47. Mr. Santoro never provided informed consent or written permission allowing Tower Health to send individually-identifiable health information about his past, present, or future health conditions to Meta.

48. Mr. Santoro never provided informed consent or written permission allowing Tower Health or Meta to put individually-identifiable health information about his past, present, or future health conditions to their own commercial uses.

49. Since 2018, Ms. Landis has used Tower Health's website to engage in communications that included individually-identifiable health information about her past, present, or future health conditions, including requests for information about specific Tower Health providers and locations, and information about specific health conditions, treatments, and medications.

50. Ms. Landis did not use Tower Health's website to share her individually-identifiable health information with Meta, or to enable Meta or Tower Health to put this data to any commercial use.

51. Tower Health never notified Ms. Landis that it would send individually-identifiable health information about her past, present, or future health conditions to Meta.

52. Tower Health never notified Ms. Landis that either it or Meta would put individually-identifiable health information about her past, present, or future health conditions to their own commercial uses.

53. Ms. Landis never provided informed consent or written permission allowing Tower Health send individually-identifiable health information about her past, present, or future health conditions to Meta.

54. Ms. Landis never provided informed consent or written permission allowing Tower Health or Meta to put individually-identifiable health information about her past, present, or future health conditions to their own commercial uses.

## CLASS ACTION ALLEGATIONS

55. Plaintiffs bring this action as a class action under Federal Rules of Civil Procedure 23(a) and (b)(3) for:

> All people who used Tower Health's website and had individually-identifiable health information about their past, present, or future health conditions shared with Meta without notice or consent.

("the Class members").

56. This action is properly maintained as a class action under Fed. R. Civ. P. 23(a)(1), because the Class members are so numerous and geographically dispersed that their joinder would be impracticable. Plaintiffs believe that Defendant's business records will permit the identification of thousands of people meeting the Class definition.

57. This action is properly maintained as a class action under Fed. R. Civ. P. 23(a)(2), because there are many common questions of facts and law concerning and affecting the Class members, including:

> a. Whether Tower Health had a duty to protect and refrain from disclosing the Class members' individually-identifiable health information;
>
> b. Whether Tower Health intentionally disclosed the Class members' individually-identifiable health information to Meta;
>
> c. Whether the Class members consented to Tower Health's disclosure of their individually-identifiable health information to Meta;
>
> d. Whether the Class members are entitled to damages as a result of Defendant's conduct; and

e. Whether Tower Health's knowing disclosure of individually-identifiable health information to Meta is "criminal or tortious" under 18 U.S.C § 2511(2)(d).

58. Plaintiffs also anticipate that Defendant will raise defenses common to the Class.

59. This action is properly maintained as a class action under Fed. R. Civ. P. 23(a)(3), because Plaintiffs' claims are typical of the claims belonging to the Class members. Plaintiffs and the Class members were harmed by the same wrongful conduct perpetrated by Defendant that caused their individually-identifiable health information to be intercepted and disclosed without notice or consent. As a result, Plaintiffs' claims are based on the same facts and legal theories as the Class members' claims.

60. This action is properly maintained as a class action under Fed. R. Civ. P. 23(a)(4), because Plaintiffs will fairly and adequately protect the interests of all the Class members, there are no known conflicts of interest between Plaintiffs and the Class members, and Plaintiffs have retained counsel experienced in the prosecution of complex litigation.

61. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3), because common questions of law and fact predominate over questions affecting the individual Class members, because a class action is superior to other available methods for the fair and efficient adjudication of these claims and because important public interests will be served by addressing the matter as a class action. Further, the prosecution of separate actions by the individual Class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and substantially impair the Class members' ability to protect their interests.

**COUNT I**
**Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.***

62. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

63. The Class members' use of Tower Health's website constitutes an electronic communication under the ECPA. *See* 18 U.S.C. § 2510(12).

64. The ECPA provides: "It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception *unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the* Constitution or *laws of the United States* or of any State." *See* 18 U.S.C § 2511(2)(d) (emphasis added).

65. Plaintiffs and the Class members used Tower Health's website to engage in electronic communications with Defendant about their individually-identifiable health information under 43 U.S.C. § 1320(d)(6), because the information they communicated was received by a healthcare provider, identified the individual making the communication, and related to their past, present, or future physical or mental health or condition, their receipt of health care, and/or their payment for that care. *See* HHS Bulletin (Exhibit 1).

66. Defendant violated the ECPA by working with Meta to design Meta Pixels that intercept the characteristics and content of electronic communications containing individually-identifiable health information that Plaintiffs and the Class members made on its website and transmit this information to Meta despite knowing (or having reason to know) Meta was not lawfully entitled to receive or use this information. *See* 18 U.S.C. §§ 2511 (1)(a), 2511(c)–(d), 2511 (3)(a); 42 U.S.C. § 1320(d)(6).

67. Defendant violated the ECPA by receiving and intercepting electronic communications containing individually-identifiable health information from the Class members on its website for the purpose of knowingly disclosing and releasing this information to Meta for commercial purposes without notice or consent, in violation of HIPAA, 42 U.S.C. § 1320(d)(6).

68. Defendant is not exempt from ECPA liability under 18 U.S.C. § 2511(2)(d) on the ground that it participated in Plaintiffs' and the Class members' communications about their individually-identifiable health information, because it used its participation in these communications to improperly share Plaintiffs' and the Class members' individually-identifiable health information with Meta, a third-party that did not participate in these communications, despite that Tower did not notify Plaintiffs and the Class members it would provide their individually-identifiable health information to Meta, Plaintiffs and the Class members did not authorize Tower to share their individually-identifiable health information with Meta, and Plaintiffs and the Class members did not authorize either Tower or Meta to use their individually-identifiable health information for commercial purposes.

69. Defendant is not exempt from ECPA liability under 18 U.S.C. § 2511(2)(d) on the ground that it participated in Plaintiffs' and the Class members' communications about their individually-identifiable health information, because the purpose of Defendant's criminal or tortious act (*i.e.*, disclosing the Class members' individually-identifiable health information for its own commercial use) was independent of its receipt and interception of that information (*i.e.*, by operation of the Meta Pixel).

70. Any person whose electronic communication is intercepted in violation of ECPA has a private right of action under 18 U.S.C. §2520(a).

71. As a result of Defendant's violation of the ECPA, Plaintiffs are entitled to all damages available under 18 U.S.C. § 2520, including equitable or declaratory relief, compensatory and punitive damages, and attorney's fees and costs.

**COUNT II**
**Negligence**

72. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

73. Plaintiffs and the Class members have communicated individually-identifiable health information to Tower Health through its website, *https://towerhealth.org*, and/or received healthcare services from doctors employed by Tower Health.

74. By virtue of creating and maintaining its website as a public healthcare resource and its employment relationship with its doctors, Tower Health has assumed a duty to keep confidential all individually-identifiable health information Plaintiffs and the Class members communicate.

75. Tower Health assumed a duty to keep Plaintiffs' and the Class members' individually-identifiable health information confidential by issuing Patient Rights & Responsibilities that say patients "have the right to keep [their] medical record and other healthcare information confidential," "have the right to personal privacy," and "have the right to receive care in a safe setting and to be free from all forms of abuse, harassment, neglect, or mistreatment." *See* Tower Patient Rights & Responsibilities, *https://towerhealth.org/locations/reading-hospital/patients/patient-resources/patient-rights-responsibilities.*

76. Tower Health assumed a duty to keep Plaintiffs' and the Class members' individually-identifiable health information confidential by issuing a Notice of Privacy Practices representing that: "information about you and your health is personal [and] we are committed to

protecting your health information." *See* Tower Health Notice of Privacy Practices *https://towerhealth.org/Notice-of-Privacy-Practices*.

77. Tower Health assumed a duty to keep Plaintiffs' and the Class members' individually-identifiable health information confidential by issuing a Notice of Privacy Practices representing that the hospital is "Required by Law to: Make sure that health information that identifies you is kept private." *Id*.

78. Tower Health assumed a duty to keep Plaintiffs' and the Class members' individually-identifiable health information confidential by issuing a Notice of Privacy Practices representing that: "Written authorization is required prior to using or disclosing your PHI for marketing activities that are supported by payments from third parties." *Id*.

79. Tower Health assumed a duty to keep Plaintiffs' and the Class members' individually-identifiable health information confidential by issuing a Confidentiality Information Agreement that defines "confidential information" to include "Protected health information, (patient medical, financial, and demographic data)," and represents that "Unauthorized access, use, modification, or disclosure of Confidential Information is strictly prohibited." *See* Tower Health Confidentiality Information Agreement *chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://towerhealth.org/sites/default/files/pdfs/2021-06/Tower%20Health%20Confidentiality%20of%20Information%20 Agreement.pdf.*

80. Tower Health assumed a duty to keep Plaintiffs' and the Class members' individually-identifiable health information confidential by issuing a Website Privacy Policy representing that it is "committed to protecting your online privacy" and that "Information that Tower Health collects on this website will not be sold or given to a third party and will be accessible only by Tower Health." *See* Tower Health Website Privacy Policy, *https://towerhealth.org/tower-health-website-privacy-policy*.

81. Tower Health has a legal duty not to disclose Plaintiffs' and the Class members' medical records for marketing purposes without their express written authorization under multiple federal laws. *See, e.g.,* 42 U.S.C. § 1320; 45 C.F.R. §§ 164.501; 164.508(a)(3), 164.514(b)(2)(i).

82. Tower Health has a legal duty to keep Plaintiffs' and the Class members' medical records confidential and private absent express written authorization under Pennsylvania law. *See, e.g.*, 28 Pa. Code § 115.27.

83. Tower Health has breached the many duties of care it assumed and otherwise owes by, among other things, placing computer code on its website to intercept the characteristics and contents of communications about Plaintiffs' and the Class members' individually-identifiable health information, transmitting this data to Meta, allowing Meta to analyze and use this data for commercial purposes, and putting this data to its own commercial use without providing adequate notice to Plaintiffs and the Class members or receiving their informed consent.

84. By engaging in the conduct alleged herein, Tower Health directly and proximately caused Plaintiffs and the Class members to suffer damages that include:

> a. suffering a loss in the value of their individually-identifiable health information;
>
> b. suffering embarrassment, humiliation, emotional harm, and distress from the unauthorized transmission and commercial use of their individually-identifiable health information;
>
> c. being deprived of the full value of healthcare services for which they paid, which included a duty to maintain the confidentiality of their individually-identifiable health information;
>
> d. being deprived of fees Meta paid to gain access to their individually-identifiable health information and put this information to various commercial uses; and
>
> e. being deprived of fees Defendant should have paid for putting their individually-identifiable health information to various commercial uses.

**COUNT III**
**Invasion of Privacy - Intrusion Upon Seclusion**

85. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

86. The common-law tort of intrusion protects others from intentionally intruding into a communication or matter as to which another has a reasonable expectation of privacy.

87. Plaintiffs and the Class members have a reasonable expectation of privacy in their communications on Tower Health's website, because communications seeking or informing the provision of healthcare services are universally understood to be personal, private, and deserving of the strictest confidentiality.

88. Plaintiffs and the Class members have a reasonable expectation of privacy in their communications on Tower Health's website, because these communications involve individually-identifiable health information that Tower Health was under a legal duty to shield from disclosure.

89. Plaintiffs and the Class members have a reasonable expectation of privacy in their communications on Tower Health's website because Tower Health's Patient Rights & Responsibilities say they: "have the right to keep [their] medical record and other healthcare information confidential," "have the right to personal privacy," and "have the right to receive care in a safe setting and to be free from all forms of abuse, harassment, neglect, or mistreatment." *See* Tower Patient Rights & Responsibilities, *https://towerhealth.org/locations/reading-hospital/ patients/patient-resources/ patient-rights-responsibilities.*

90. Plaintiffs and the Class members have a reasonable expectation of privacy in their communications on Tower Health's website, because Tower Health's Notice of Privacy Practices advises that: "information about you and your health is personal [and] we are committed to protecting your health information." *See* Tower Health Notice of Privacy Practices, *https://tower health.org/Notice-of-Privacy-Practices.*

91. Plaintiffs and the Class members have a reasonable expectation of privacy in their communications on Tower Health's website, because Tower Health's Notice of Privacy Practices represents that it is "Required by Law to: Make sure that health information that identifies you is kept private." *Id*.

92. Plaintiffs and the Class members have a reasonable expectation of privacy in their communications on Tower Health's website, because Tower Health's Notice of Privacy Practices represents that: "Written authorization is required prior to using or disclosing your PHI for marketing activities that are supported by payments from third parties." *Id*.

93. Plaintiffs and the Class members have a reasonable expectation of privacy in their communications on Tower Health's website, because Tower Health's Confidentiality Information Agreement defines "confidential information" to include "Protected health information, (patient medical, financial, and demographic data)," and represents that "Unauthorized access, use, modification, or disclosure of Confidential Information is strictly prohibited." *See chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://towerhealth.org/sites/default/files/pdfs/2021-06/Tower%20Health%20Confidentiality%20of%20Information%20 Agreement.pdf.*

94. Plaintiffs and the Class members have a reasonable expectation of privacy in their communications on Tower Health's website, because Tower Health's Website Privacy Policy represents that it is "committed to protecting your online privacy" and that "Information that Tower Health collects on this website will not be sold or given to a third party and will be accessible only by Tower Health." *See* Tower Health Website Privacy Policy, *https://towerhealth.org/tower-health-website-privacy-policy.*

95. Plaintiffs and the Class members have a reasonable expectation of privacy in their communications on Tower Health's website, because Meta's policies say that businesses using Meta Pixels will not share data they "know or reasonably should know... includes health, financial

information or other categories of sensitive information (including any information defined as sensitive under applicable laws, regulations and applicable industry guidelines)." *See* Facebook Business Tools terms, *https://www.facebook.com/legal/terms/businesstools* at 1(h); Meta Commercial Terms, *https://www.facebook.com/legal/commercialterms* at 3.

96. Tower Health intentionally intruded into Plaintiffs' and the Class members' private communications on its website by placing computer code that intercepted the characteristics and contents of communications that included individually-identifiable health information and transmitted this information to Meta without notice or consent.

97. Tower Health intentionally intruded into Plaintiffs' and the Class members' private communications on its website by using individually-identifiable health information intercepted from these communications for its own commercial purposes.

98. Tower Health intentionally intruded into Plaintiffs' and the Class members' private communications on its website by allowing Meta to use individually-identifiable health information intercepted from these communications for its commercial purposes.

99. Tower Health's intentional intrusion into Plaintiffs' and the Class members' private communications on its website is highly offensive to a reasonable person, because it operates a healthcare system founded upon the principle that strict confidentiality is required to encourage the open communication of the private, sensitive information required for healthcare providers to make fully-informed treatment decisions and provide the most appropriate care.

100. Tower Health's intentional intrusion into Plaintiffs' and the Class members' private communications on its website is highly offensive to a reasonable person, because the information it intercepted is universally understood to be personal, private, and deserving of confidential treatment.

101. Tower Health's intentional intrusion into Plaintiffs' and the Class members' communications on its website is highly offensive to a reasonable person, because it violated its own repeated, public promises to keep individually-identifiable health information private, confidential, secure, and protected against unauthorized use without notice and consent.

102. Tower Health's intentional intrusion into Plaintiffs' and the Class members' communications on its website is highly offensive to a reasonable person, because it involved intercepting and disclosing the contents of individually-identifiable health information to Meta, which was not a participant in, or an intended recipient of, these communications.

103. Tower Health's intentional intrusion into Plaintiffs' and the Class members' communications on its website is highly offensive to a reasonable person, because it did not provide notice to Plaintiffs or the Class members that it would put their individually-identifiable health information to its own commercial use.

104. Tower Health's intentional intrusion into Plaintiffs' and the Class members' communications on its website is highly offensive to a reasonable person, because it did not provide notice to Plaintiffs or the Class members that it would share their individually-identifiable health information with Meta, or allow Meta to put this information to commercial use.

105. Tower Health's intentional intrusion into Plaintiffs' and the Class members' communications on its website is highly offensive to a reasonable person, because it did not provide Plaintiffs or the Class members with adequate notice of its intention to put their individually-identifiable health information to commercial use.

106. Tower Health's intentional intrusion into Plaintiffs' and the Class members' communications on its website is highly offensive to a reasonable person, because it did not receive informed, written consent from Plaintiffs or the Class members allowing it to put their individually-identifiable health information to commercial use.

107. Tower Health's intentional intrusion into Plaintiffs' and the Class members' communications on its website is highly offensive to a reasonable person, because it did not provide adequate notice of its intention to allow Meta to put their individually-identifiable health information to commercial use.

108. Tower Health's intentional intrusion into Plaintiffs' and the Class members' communications on its website is highly offensive to a reasonable person, because it did not receive informed, written consent from Plaintiffs or the Class members allowing Meta to put their individually-identifiable health information to commercial use.

109. Tower Health's intentional intrusion into Plaintiffs' and the Class members' communications on its website is highly offensive to a reasonable person, because the commercial use of Plaintiffs' and the Class members' individually-identifiable health information provided substantial financial value and generated substantial economic benefit for both Defendant and Meta that was not shared with Plaintiffs or the Class members.

110. By engaging in the conduct alleged herein, Tower Health directly and proximately caused Plaintiffs and the Class members to suffer damages that include:

a. suffering a loss in the value of their individually-identifiable health information;

b. suffering embarrassment, humiliation, emotional harm, and distress from the unauthorized transmission and commercial use of their individually-identifiable health information;

c. being deprived of the full value of healthcare services for which they paid, which included a duty to maintain the confidentiality of their patient information;

d. being deprived of fees Meta paid to gain access to their individually-identifiable health information and put this information to various commercial uses; and

e. being deprived of fees Defendant should have paid for putting their individually-identifiable health information to various commercial uses.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully ask this Court for an Order:

a. Certifying this case as a class action, appointing Plaintiffs as Class Representatives, and appointing Stephan Zouras LLP as Class Counsel;

b. Entering judgment for Plaintiffs and the Class members on their ECPA claim and awarding all damages available under 18 U.S.C. § 2520, including equitable or declaratory relief, compensatory and punitive damages, and attorney's fees and costs;

c. Entering judgment for Plaintiffs and the Class members on their negligence claim and awarding all available damages, including the value Tower Health received from selling or licensing Plaintiffs' and the Class members' individually-identifiable health information to Meta and/or sharing this information with Meta, and the value Tower Health received from using Plaintiffs' and the Class members' individually-identifiable health information for its own commercial benefit;

d. Entering judgment for Plaintiffs and the Class members on their intrusion upon seclusion claim and awarding all available damages, including injunctive relief requiring Tower Health to cease violating their privacy rights without their knowledge or consent and nominal damages of $100 per violation;

e. Awarding injunctive relief to Plaintiffs and the Class members that includes an order barring Defendant from any further interception, transmission, or commercial use of Plaintiffs' and the Class members' individually-identifiable health information from Tower Health's website absent express notice and informed consent;

f. Awarding pre- and post-judgment interest on all damages awarded;

g. Awarding recovery of Plaintiffs' reasonable attorneys' fees and reimbursement of their litigation expenses; and

h. Awarding such additional relief as justice requires.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully Submitted,

Dated: May 30, 2023

/s/ *David J. Cohen*
David J. Cohen
**STEPHAN ZOURAS, LLP**
604 Spruce Street
Philadelphia, PA 19106
(215) 873-4836
*dcohen@stephanzouras.com*

Ryan F. Stephan (admitted *pro hac vice*)
James B. Zouras (admitted *pro hac vice*)
Teresa M. Becvar (admitted *pro hac vice*)
**STEPHAN ZOURAS, LLP**
222 W. Adams Street, Suite 2020
Chicago, IL 60606
(312) 233-1550
*rstephan@stephanzouras.com*
*jzouras@stephanzouras.com*
*tbecvar@stephanzouras.com*

*Attorneys for Plaintiffs*