**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PATRICK SANTORO and JESSICA LANDIS, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>TOWER HEALTH,<br><br>*Defendant*. | Case No. 5:22-cv-04580-JFM<br><br>JURY TRIAL DEMANDED |

**DEFENDANT TOWER HEALTH'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

In a transparent attempt to overcome the deficiencies of their claims, Plaintiffs once again revise their allegations—this time in their Opposition ("Opposition") to Tower Health's Motion to Dismiss the Second Amended Complaint ("Motion").[1] Plaintiffs' latest efforts only draw attention to the futility of such amendments. Plaintiffs' claims still fail. First, the **wiretap claim** fails because Tower was a party to Plaintiffs' communications, no content was intercepted, and no exception applies. Plaintiffs' wiretap claim also fails because they do not allege the Meta Pixel intercepted the contents of their communications. Second, Plaintiffs' **negligence claim** fails because they have not sufficiently alleged a breach of duty or injury, and the economic loss doctrine precludes their claim. Last, Plaintiffs' **intrusion upon seclusion claim** fails because Plaintiffs do not—and cannot—identify any allegations of an intentional intrusion committed by Tower, nor was any alleged intrusion "highly offensive." For each of these reasons, the Court should dismiss Plaintiffs Second Amended Complaint (the "Complaint" or "SAC") with prejudice.

## I. <u>Plaintiffs' New Allegations Must Be Ignored</u>.

Plaintiffs improperly raise two new allegations in their Opposition: (1) that Plaintiffs each requested appointments on Tower Health's website; and (2) that they communicated with the "virtual assistant" on Tower's website. *See* Opp., ECF 46 at 5.

But Plaintiffs' factual allegations in their Complaint are limited to general claims of "browsing" or "navigating" activity on Tower's website. *See* SAC, ECF 40 at ¶¶ 43, 49. Neither plaintiff identifies a single webpage they actually visited or website feature they used. Nor are there allegations of any keystrokes or information entered—no search terms, no forms submitted, no log-ins. *See id.* ¶¶ 43–54. Now, for the first time in their Opposition, Plaintiffs allege they used Tower's website to schedule appointments and use Tower's "virtual assistant." *Compare* Opp.,

[1] When citing the Motion, Tower cites the CM/ECF file-stamped page number.

ECF 46 at 4 *with* SAC, ECF 40 at ¶¶ 43, 49. But the Complaint, and the paragraphs Plaintiffs attempt to cite in support, are devoid of such allegations. *See* Opp., ECF 46 at 5, 18, 24 (citing SAC, ECF 40 at ¶¶ 3, 10, 23–26, 40, 41, 65, 66). Plaintiffs do not allege that *they* ever used Tower's website to request appointments in their Complaint. *See* SAC, ECF 40 at ¶¶ 43, 49. Plaintiffs cannot use their Opposition as a vehicle to amend the Complaint. *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *Franklin v. City of Pittsburgh*, 2023 WL 4744835, at *2 n.2 (W.D. Pa. July 25, 2023) (finding "new allegations in [a] response in opposition and sur-reply that relate to named defendant . . . cannot constitute an amendment of his complaint"). These new allegations should be disregarded.

Even if these new allegations were allowed, they are futile. As Plaintiffs' Opposition makes clear, website visitors are directed to MyTowerHealth.org—a portal website that is ***separate*** from the towerhealth.org website at issue in this lawsuit—to request an appointment.[2] Plaintiffs do not (and cannot) allege that the separate MyTowerHealth.org site contains Meta Pixel technology. Plaintiffs know this as they have (twice) amended the complaint to remove allegations that Tower used Meta Pixel technology on the MyTowerHealth.org website. *Compare* SAC, ECF 40 ("Plaintiffs have brought this action to redress Defendant's highly-offensive practice of placing computer code on the Tower Health website") *with* Compl., ECF 1 ¶ 3 (Defendants worked together to design and place computer code on the MyTowerHealth site that secretly tracks patients' protected healthcare information) & First Am. Compl., ECF 28 ¶ 3 ("Plaintiffs have

---

[2] *See* Opp., ECF 46 at 15–16 ("Clicking the Appointment button leads to a new page, *https://www.mytowerhealth.org/mytowerhealth//publicforms.asp?mode=showform&formname=ApptReqCntrPublic*"); *see also* Mot., ECF 43 at 11 (explaining that MyTowerHealth is a separate website that hosts Tower's patient portal).

brought this action to redress Defendants' highly-offensive practice of: placing computer code on its website, *www.towerhealth.org*, and the MyTowerHealth online portal").

In evaluating the viability of Plaintiffs' claims, the Court should rely solely on allegations in the Complaint (that Plaintiffs' browsed only Tower's public website, www.towerhealth.org). And the allegations in the Complaint are nothing more than a collection of hypotheticals that fail to allege the requisite facts about what interactions these individual plaintiffs had with Tower's website. These bare allegations are simply not enough to sustain Plaintiffs' claims against Tower. *See Cousin v. Sharp Healthcare*, 2023 WL 4484441, at *5–7 (S.D. Cal. July 12, 2023) (dismissing Plaintiffs' claims because Plaintiffs "lump together a variety of alleged activity undertaken by Defendant, some of which is not actionable, with no meaningful factual support as to what activities each Plaintiff engaged in on Sharp's website and what information each Plaintiff provided."). Where, as here, Plaintiffs assert only that they visited a public website, any information collected "is not 'Protected Health Information' because 'nothing about [the] information relates specifically to Plaintiffs' health' and the information is 'general health information that is accessible to the public at large.'" *Id.* at *6 (quoting *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018)). Plaintiffs' attempt to revise their allegations should be ignored.

## II. <u>Tower's Background on the Meta Pixel Is Based on the Complaint</u>.

In their Opposition, Plaintiffs urge this Court to disregard Tower's arguments relating to the background of the Meta Pixel. This would be improper. Despite Plaintiffs' attempt to suggest otherwise, Tower relies solely on the allegations in the Complaint, including the publicly available policies cited therein. *See* SAC, ECF 40 at ¶ 13 (citing Meta's Terms of Use, Data Policy and Cookie Policy). Moreover, Tower's general statement that advertising technologies have long been an ordinary, ubiquitous part of Internet commerce is borne out by the very case law cited by both

parties. *See, e.g.*, *Hazel v. Prudential Fin., Inc.*, No. 22-CV-07465-CRB, 2023 WL 3933073, at *1 (N.D. Cal. June 9, 2023) ("This action is just the latest in a long line of cases challenging the use of third-party software to record website visitors' activity."); *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) (alleging that Oracle created a marketplace of information through the use of various advertising technologies, including pixels); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 130 (3d Cir. 2015) (involving "allegations that the defendants, who run internet advertising businesses, placed tracking cookies on the plaintiffs' web browsers in contravention of their browsers' cookie blockers").

**III. <u>Plaintiffs Fail to Plead a Claim Under the Federal Wiretap Act</u>.**

**The One-Party Consent Rule Applies.** The parties agree that Tower was a party to Plaintiffs' communications on Tower's website (Opp. ECF 46 at 8), but Plaintiffs argue that neither the party exception nor the one-party consent rule should apply because Tower "committed a federal crime by knowingly sharing the class members' individually-identifiable health information with Meta." *Id.* at 10. This is outlandish. Tower Health has not committed a federal crime, and Plaintiffs cannot be allowed to stand on such inflammatory false allegations.

**No Criminal-Tortious Purpose Exception Applies.** In an apparent effort to create an independent criminal purpose, Plaintiffs attempt to distinguish between the Meta Pixel's alleged interception of electronic communications with its disclosure of electronic communications. *See id.* at 9–10. Yet, the interception and disclosure Plaintiffs allege are the same act. SAC, ECF 40 at ¶ 26. It is for this very reason that courts examining the Meta Pixel have rejected this same argument. *Kurowski v. Rush Sys. for Health*, 2023 WL 4707184, at *9 (N.D. Ill. July 24, 2023) ("*Kurowski II*") (finding criminal or tortious purpose allegations to be duplicative of the wiretapping allegations).

**Tower's use of the Meta Pixel is not a HIPAA violation.** Even if the Meta Pixel's interception and disclosure of communications constituted separate acts, the alleged disclosure of website browsing activity is not a violation of HIPAA. The *Kurowski* court's two separate rejections of a similar theory is instructive. *Kurowski II*, at *5; *see also see also Kurowski v. Rush Sys. for Health*, 2023 WL 2349606, at *10 (N.D. Ill. Mar. 3, 2023) ("*Kurowski I*"). Like Plaintiffs here, the plaintiff in Kurowski attempted to rely on the U.S. Department of Health and Human Services ("HHS") Guidance to determine that the defendant violated HIPAA, arguing that the criminal or tortious purpose applied because Rush Health "knowingly . . . disclose[d] individually identifiable health information to another person" in violation of 42 U.S.C § 1320d(6). *Kurowski II*, 2023 WL 4707184, at *5. The court flatly rejected these arguments, holding that the plaintiff's allegations were "far too vague to allow an inference to be drawn that Rush was actually disclosing [individually identifiable health information] as it is unambiguously defined by HIPAA, rather than just metadata." *Id*. at *7. This Court should hold the same.

As recognized in *Doe v. Regents of University of California*, 2023 WL 3316766 (N.D. Cal. May 8, 2023), to allege a HIPAA violation, plaintiffs need to provide details about *what* health information was intercepted. In *Regents*, the plaintiff alleged that she "entered data relating to her heart issues and high blood pressure in MyChart and later received advertisements on Facebook, including at least one advertisement relating to high blood pressure medication." *Id.* at *2. Plaintiffs Santoro and Landis cite no such details, and bizarrely protest providing them. *See* Opp., ECF 46 at 18. But the Court should find these details necessary if Plaintiffs "expect to bring a lawsuit related to the invasion of [their] medical privacy." *Kurowski II*, 2023 WL 4707184, at *7. Indeed, as the *Kurowski II* court found, Plaintiffs cannot "completely evade revealing what it is that [they] allege[] [a hospital] disclosed to third parties." *Id.*

But even if Plaintiffs' allegations included sufficient details, the HHS Bulletin, upon which Plaintiffs rely so heavily in their Opposition, does not apply because it does not carry the force of law. *Kurowski II*, 2023 WL 4707184, at *5; *see also Kurowski I*, 2023 WL 2349606. First, the Guidance does not have retroactive effect. *Kurowski II*, 2023 WL 4707184, at *6; *Kurowski I*, 2023 WL 2349606 at *9 (citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 n.31 (1979)). The December 2022 HHS Bulletin therefore only applies prospectively, and Plaintiffs do not (and cannot) allege that Tower used the Meta Pixel on its website after December 2022. Second, "HHS's interpretation of the statute is not entitled to deference under *Chevron*" because it is not the product of rulemaking or adjudication. *Kurowski* II, 2023 WL 4707184, at *7; s*ee also Christensen v. Harris Cnty*., 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and *enforcement guidelines*, all of which lack the force of law—do not warrant *Chevron*-style deference."). Finally, even if agency guidance were entitled to deference, HHS's interpretation of individually identifiable health information ("IIHI") "goes well beyond the meaning of what the statute can bear." *Id.* at *8. The *Kurowski II* court explicitly found that information transmitted by the Meta Pixel "does not in the least bit fit into th[e] category" of IIHI. *Id.* This Court should find the same.

**No Contents Were Intercepted.** Plaintiffs' bare allegation that they visited Tower's website is not enough to establish that "contents" were intercepted or disclosed to a third party. *See Cousin*, 2023 WL 4484441, at *16–17 (finding "[p]laintiffs do not provide sufficient factual support to plausibly claim their content was intercepted by Meta as a result of installing Meta Pixel on Sharp's webpage."). Indeed, even the HHS Guidance recognizes that not all webpages on a hospital's public website that use tracking technology disclose IIHI. *See* Mot., ECF 43 at 3 ("Tracking technologies on regulated entities' [public] webpages generally do not have access to individuals' [IIHI]."). Plaintiffs do not identify a single visit to a specific webpage on Tower's

website—no search terms or keystrokes entered, no forms filled out. *See* SAC, ECF 40 at ¶¶ 43–54. Instead, Plaintiffs point to general information, like IP addresses and URLs visited, and attempt to categorize them as "contents." But as several courts have held, this type of information does not concern the "substance, purport, or meaning of a communication" as required to be "contents" of a communication. *See*, *e.g.*, *In re Nickelodeon*, 2014 WL 3012873, at *14 (D.N.J. July 2, 2014).

None of the general categories of "characteristics" (*i.e.*, IP addresses, Facebook ID, cookie identifiers, device identifiers and account numbers) identified in the Complaint are "contents" under the Act. *In re Nickelodeon*, 2014 WL 3012873, at *15 (finding addressing information, including "IP addresses . . . are simply not 'contents' of a communication"); *see also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012) ("[I]dentities of parties to a communication . . . is not 'content'" because such data "contains no information concerning the substance, purport, or meaning of [the] communication.") (internal quotation marks omitted); *see also Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) ("Content" does not include information "generated in the course of the communication," including the "name, address and subscriber number or identity of a subscriber or customer").

For these reasons, this Court should find that Plaintiffs' allegation that Tower used the Meta Pixel on its public website alone cannot give rise to an actionable wiretap claim.

## IV. Plaintiffs Fail to State a Claim for Negligence.

**Tower Did Not Breach Any Duty.** Plaintiffs argue their negligence claim "is plausible" because the Complaint presents "extensive allegations" about the "specific, individually-identifiable health information Defendant's website collected" and "how [Tower] breached its duty to protect Plaintiffs' individually-identifiable health information by putting this data to multiple commercial uses without notice or consent." Opp., ECF 46 at 20. But Plaintiffs do not point to a

single paragraph in the Complaint where Plaintiffs allege any specific information Tower actually shared with Meta (in "breach" of any duty).

**Plaintiffs Allege No Injury.** Tower's Motion cited several cases showing that Plaintiffs have failed to allege actual loss or injury. Mot., ECF 43 at 14. Plaintiffs responded to none of them. Instead, Plaintiffs cite *Opris v. Sincera Reproductive Medicine*, 2022 WL 1639417, *1 (E.D. Pa. May 24, 2022) for the proposition that the disclosure of IIHI results in a loss of value sufficient to state an actual injury. But *Opris*, the first Pennsylvania court to evaluate an injury in a data privacy case, merely held that "mitigation damages, such as those allegedly incurred by Plaintiffs in purchasing credit and identity theft monitoring services, are a sufficient form of damages for a negligence claim." *Id.* at *7. Plaintiffs do not seek such mitigation damages. Although the *Opris* court mentions that the loss of property value of personal information may support a negligence claim, it does not find that such allegations alone are sufficient. *Id.* at *8. ("Because Plaintiffs have alleged loss of value to their PII and PHI, this assertion further supports that they suffered damages as a result of [defendant's] negligence."). As Tower demonstrated in its Motion, this is in accord with other courts. Mot., ECF 43 at 16–17; s*ee also Griffey v. Magellan Health Inc.* ("*Griffey I*"), 562 F. Supp. 3d 34, 45 (D. Ariz. 2021) ("[G]eneral allegations that a plaintiff's personal information has diminished in value are not enough"); *see id.* at 46 ("[M]erely alleging a diminution in value to somebody's PII or PHI is insufficient."). For this reason the Court should rely on the cases cited by Tower that demonstrate Plaintiff has not alleged an actual injury.

**The Economic Loss Doctrine Precludes Plaintiffs' Claim.** In an apparent effort to minimize Tower's economic loss doctrine defense, Plaintiffs respond to it in a footnote, arguing that because their use of Tower's website was not contractual, the economic loss doctrine does not apply. Opp., ECF 46 at 19 n.9. But the Pennsylvania Supreme Court held that in cases involving purely economic losses, a negligence claim may survive only if the plaintiff can establish a legal

duty that "exists *independently* from any contractual obligations between the parties." *Dittman v. UPMC*, 649 Pa. 496, 528, 196 A.3d 1036, 1056 (2018) (emphasis added). Plaintiffs cannot, thus their negligence claims are precluded by Pennsylvania's economic loss doctrine.

For each of these reasons, the Court should dismiss Plaintiffs' negligence claim.

**V. <u>Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion</u>.**

**Plaintiffs Identify No Intentional Intrusion.** Plaintiffs do not address their failure to identify an "intentional intrusion." Instead, they argue that they had a reasonable expectation of privacy while browsing Tower's public website. *See* Opp., ECF 46 at 25–26.

The *Kurowski* opinions are again on point. The intrusion alleged by Plaintiffs Santoro and Landis is similar to the one alleged in *Kurowski*. *Compare id.* at 26 (Tower intentionally intruded "by placing computer code that intercepted the characteristics and contents of communications that included individually-identifiable health information and transmitted this information to Meta without notice or consent.") *with Kurowski II*, 2023 WL 4707184, at *17 ("Rush surreptitiously 'bugs' its own web properties by placing third-party cookies on them that are disguised as belonging to Rush."). The court in *Kurowski II* found that "[t]he harm caused by [the hospital], if any, continues to be its alleged disclosure of Kurowski's private health information." *Kurowski II*, at *17. And yet again, the *Kurowski II* court held the hospital "cannot plausibly be considered to have intruded on, intercepted, or 'bugged' private communications that it was always the intended recipient of." *Kurowski II*, at *17–18. This Court should find the same.

**No Highly Offensive Intrusion.** Plaintiffs argue that the Court should "discredit" Tower's argument that its use of the Meta Pixel is not "highly offensive." Opp., ECF 46 at 27. But Tower's use of the Meta Pixel cannot be considered highly offensive because Tower did not use the Meta Pixel to collect IIHI, including on Tower's appointment scheduling webpage. Even if Plaintiffs had alleged they scheduled an appointment with a Tower provider, which they did not do in their

Complaint, that would have been done on a separate website (MyTowerHealth.org)—not towerhealth.org. *See id.* at 16.

Furthermore, the cases cited by Plaintiffs do not prevent the Court from resolving the intrusion upon seclusion claim now. With the exception of *Cousin*, none of the examples cited by Plaintiffs include the disclosure of website browsing activity. In *Cousin*, the court dismissed the invasion of privacy claim because it was not clear from the allegations that Facebook matched information from Sharp Healthcare's website with any plaintiff or "what information, precisely, Plaintiffs shared with Sharp that was subsequently obtained by Meta." *Cousin*, 2023 WL 4484441 at *10. The same is true here. The *Cousin* court also held that "even if Plaintiffs had alleged all these facts sufficiently, disclosing a user's browsing history does not plausibly reach the level of 'highly offensive' conduct." *Id.* Like in *Cousin*, Plaintiffs' Complaint alleges nothing more than that their browsing history was disclosed. This Court should follow the *Cousin* court in determining that is not "highly offensive."

Further, Plaintiffs have not provided any facts to support their assertion that they experienced mental suffering, shame, or humiliation at all. *Gerhart v. Energy Transfer Partners, L.P.*, 2020 WL 1503674, at *26 (M.D. Pa. Mar. 30, 2020); *see also* Mot., ECF 43 at 21–22 (collecting cases). Plaintiffs' claim for intrusion upon seclusion should be dismissed.

## **Conclusion**

Tower Health respectfully requests that this Court dismiss the Second Amended Complaint with prejudice.

Dated: August 15, 2023

Respectfully submitted,

By: /s/ Erin L. Leffler
Erin (Loucks) Leffler (PA ID No. 204507)
eleffler@shb.com
Two Commerce Square
2001 Market St., Suite 3000
Philadelphia, PA 19103
Tel: (215) 278-2555 | Fax: (215) 278-2594

Alfred J. Saikali (*pro hac vice* forthcoming)
asaikali@shb.com
SHOOK, HARDY & BACON L.L.P.
201 South Biscayne Blvd., Suite 3200
Miami, Florida 33131
Tel: (305) 358-5171 | Fax: (305) 358-7470

Jenn O. Hatcher (*pro hac vice* forthcoming)
jhatcher@shb.com
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Tel: (816) 474-6550 | Fax: (816) 421-5547

Lindsey M. Knapton (*pro hac vice* forthcoming)
lknapton@shb.com
SHOOK, HARDY & BACON L.L.P.
1600 17th Street, Suite 450
Denver, CO 80202
Tel: (303) 285-5300 | Fax: (303) 285-5301

*Attorneys for Defendant Tower Health*