**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PATRICK SANTORO and JESSICA LANDIS,** **Plaintiffs,** | : | **Case No. 22-cv-4580-JFM** |
| **v.** | : | |
| **TOWER HEALTH,** **Defendant.** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' RECONSIDERATION MOTION**

Patrick Santoro and Jessica Landis ("Plaintiffs") hereby submit this Memorandum of Law in support of their Reconsideration Motion.

## I. INTRODUCTION

Plaintiffs claim to have engaged in HIPAA-protected communications with Defendant's website that, because of the Meta Pixels embedded on its pages, shared their personally identifiable patient information with Meta and allowed both Defendant and Meta to use this information for commercial purposes without Plaintiffs' notice or consent. Defendant does not deny engaging in these activities. Instead, it simply claims Plaintiffs' allegations are not specific enough. The key question at oral argument on Defendant's Motion to Dismiss was whether the Court would allow Plaintiffs' ECPA, negligence, and privacy claims to proceed to discovery without first requiring Plaintiffs to plead the specific details of their website communications, which would require them to reveal confidential medical information protected by law. Before this Court issued its Opinion dismissing Plaintiffs' claims with prejudice, it had not previously ordered the Plaintiffs to plead their website use more specifically, Plaintiffs had not admitted or demonstrated any inability to plead more specific facts, and Defendant had not introduced any evidence proving Plaintiffs' inability to plead these details. Any (or all) of these things should have happened before the Court

dismissed Plaintiffs' claims with prejudice.

Plaintiffs respect, and do not challenge, the Court's ability to find allegations deficient, or require more specific pleadings. However, in this case, where the record facts simply do not demonstrate Plaintiffs' inability to plead the details of their website communications, the Court's finding that "amendment would be futile" should be reconsidered. Because Plaintiffs *are* able to plead the details of the interactions with Tower's website in detail, as demonstrated by their proposed Third Amended Complaint, they respectfully ask the Court to reconsider its April 24, 2024 Order granting Defendant's Motion to Dismiss and dismissing all of Plaintiffs' claims with prejudice.

## II. BACKGROUND FACTS

On November 16, 2022, Plaintiffs filed an 81-paragraph Complaint against Tower Health ("Tower") and Meta Platforms, Inc. ("Meta") that pled a violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq*. ("ECPA"), along with ancillary claims for breach of contract, negligence, and intrusion upon seclusion to address Tower's surreptitious sharing of their personally-identifiable patient information through Meta Pixels on the MyTowerHealth patient portal. Complaint [Doc. 1]. Plaintiffs pled that they entered their names, mailing addresses, birth dates, genders, phone numbers, e-mail addresses and abbreviated Social Security numbers into the MyTowerHealth patient portal and used the portal to schedule medical appointments, view test results, access doctor's notes, message medical providers, and review medications, but did not specifically describe these details. *Id.* at ¶¶ 4-5, 26, 28 [Doc. 1].

The Parties stipulated to extend the due date for Tower's responsive pleading twice, on January 13, 2023 [Doc. 10] and February 6, 2023 [Doc. 21]. The Court approved both extensions. Jan. 13, 2023 and Feb. 7, 2023 Orders [Docs. 12 and 22]. Between these dates, Plaintiffs and Meta

stipulated to sever Plaintiffs' claims against Meta to the U.S. District Court for the Northern District of California. [Doc. 18].

On March 6, 2023, Tower filed a Motion to Dismiss. [Doc. 25]. Tower asked the Court to dismiss Plaintiffs' ECPA claim because they pled Tower was party to their communications on its portal; because Meta and Tower consented to intercept these communications; because Plaintiffs did not plead Tower intercepted their communications for the purpose of committing a criminal or tortious act; because Plaintiffs did not plead Tower acted intentionally; and because Plaintiffs did not plead Tower provides an "electronic communication service to the public." Def. Mem., pp. 6-12 [Doc. 25]. Tower asked the Court to dismiss Plaintiffs' negligence claim because Plaintiffs failed to allege facts demonstrating a duty of care, an actual loss, or any damages. *Id.* at pp. 12-14. Tower asked the Court to dismiss Plaintiffs' privacy claim because Plaintiffs failed to allege Tower's intrusion was intentional, and because Plaintiffs failed to provide a sufficient factual basis to conclude its intrusion was highly offensive. *Id.* at pp. 14-18.

On March 20, 2023, as a "matter of course" under Rule 15(a)(1)(B), Plaintiffs filed a 121-paragraph Amended Complaint against Tower and Meta. [Doc. 28]. The Amended Complaint pled a violation of the ECPA against Tower along with ancillary claims for breach of contract, negligence, and intrusion upon seclusion to address its surreptitious sharing of their personally identifiable patient information through Meta Pixels on the MyTowerHealth patient portal. Am. Cpt. [Doc. 28]. Plaintiffs' Amended Complaint included a 16-paragraph section in which Plaintiffs pled that they entered their names, mailing addresses, birth dates, genders, phone numbers, e-mail addresses and abbreviated Social Security numbers into the MyTowerHealth patient portal and used the portal to communicate with their doctors and medical office staff about personally-identifiable health information, including their medical symptoms, conditions, and

concerns, their healthcare appointments, their medical tests and test results, their doctors' visit notes, and their medications, prescriptions, and treatments, but did not specifically describe these details. *Id.* at ¶¶ 33-48.

The Parties stipulated to extend the due date for Tower's responsive pleading on March 27, 2023 [Doc. 30]. The Court approved this extension. Mar. 28, 2023 Order [Doc. 32]. At the same time, Plaintiffs responded to a "show cause" order by agreeing to dismiss their claims against Meta, which the Court approved. [Docs. 29, 31, 33].

On April 24, 2023, Tower filed a second Motion to Dismiss. [Doc. 35]. Tower asked the Court to dismiss Plaintiffs' ECPA claim because they pled Plaintiffs failed to allege an unlawful interception; because Tower was party to the communications at issue; because Plaintiffs pled that Meta and Tower consented to all intercepted communications; because Plaintiffs did not plead Tower acted intentionally; because Plaintiffs did not plead Tower intercepted contents; and because Tower did not provide an electronic communication service. Def. Mem., pp. 8-14 [Doc. 35-2]. Tower asked the Court to dismiss Plaintiffs' negligence claim because Plaintiffs failed to plead facts demonstrating a duty of care, an actual loss, or any damages. *Id.* at pp. 14-16. Tower asked the Court to dismiss Plaintiffs' privacy claim because Plaintiffs failed to plead Tower committed an intrusion; because Plaintiffs failed to allege Tower's intrusion was highly offensive; and because Plaintiffs failed to show actual harm or damages. *Id.* at pp. 17-20.

After receiving this filing, Plaintiffs conferred with Tower about their intention to file a Second Amended Complaint with additional factual allegations answering many of Defendant's arguments and filed a stipulation providing additional time to file a Motion for Leave to Amend. Stipulation, ¶¶ 3-4 [Doc. 36]. On May 1, 2023, the Court approved this stipulation. May 1, 2023 Order [Doc. 37]. On May 18, 2024, Plaintiffs filed an unopposed Motion for Leave to File a

Second Amended Complaint ("SAC") [Doc. 38], which the Court approved. May. 23, 2023 Order [Doc. 39].

On May 30, 2023, with the Court's leave, Plaintiffs filed a 110-paragraph SAC against Tower. [Doc. 40]. Plaintiffs' SAC pled a violation of the ECPA against Tower along with ancillary claims for negligence and intrusion upon seclusion to address its surreptitious sharing of their personally identifiable patient information through Meta Pixels on Tower Health's public website. *Id.* Plaintiffs' SAC included a 12-paragraph section describing their communication of individually identifiable health information on Tower Health's website, including: their past, present, and future health conditions, their requests for information about specific Tower Health providers and locations, and their provision of information about specific health conditions, treatments, and medications, but did not describe the details of these communications. *Id.* at ¶¶ 43-54.

The Parties stipulated to extend the due date for Tower's responsive pleading on June 6, 2023 [Doc. 41]. The Court approved this extension. Jun. 6, 2023 Order [Doc. 42].

On June 27, 2023, Tower filed its third Motion to Dismiss. [Doc. 43]. Tower asked the Court to dismiss Plaintiffs' ECPA claim because they alleged Plaintiffs failed to plead an unlawful interception; because Tower was party to the communications at issue; because Plaintiffs pled Meta and Tower consented to all intercepted communications; because Plaintiffs did not plead Tower acted with a criminal or tortious purpose; because Plaintiffs did not plead Tower acted intentionally; and because Plaintiffs did not plead Tower intercepted contents. Def. Mem., pp. 6-12 [Doc. 43-2]. Tower asked the Court to dismiss Plaintiffs' negligence claim because Plaintiffs failed to plead facts demonstrating a breach of any duty of care; because Plaintiffs did not plead a causal connection between Tower's use of the Meta Pixel and their injuries; because Plaintiffs did

not plead actual loss or damage; and because the economic loss doctrine precludes Plaintiffs' negligence claim. *Id.* at pp. 12-18. Tower asked the Court to dismiss Plaintiffs' privacy claim because Plaintiffs failed to plead Tower committed an intrusion; because Plaintiffs failed to plead an intrusion into a private place or their private affairs; because Plaintiffs failed to plead any intrusion was highly offensive; because Plaintiffs failed to show actual harm or damages; and because Plaintiffs did not have a reasonable expectation of privacy in their interactions with its public website. *Id.* at pp. 18-24.

On August 1, 2023, Plaintiffs filed their Opposition. [Doc. 46]. Plaintiffs supported their claims by explaining: that the Meta Pixels on Tower's website are designed to capture extensive information about all visitors, including their IP address, Facebook ID, cookie identifiers, device identifiers, and account numbers, SAC at ¶¶ 3, 23, 26, 40-41 [Doc. 40]; that, by viewing and selecting pages, tabs, buttons, and links, visitors to Tower's website engage in substantive communications that involve requesting and receiving information about specific healthcare-related topics. *id*. at ¶¶ 25-26; that the Meta Pixels on Tower's website actually capture all information everyone who uses this website accesses, communicates, requests, or views, including personally identifiable health information they enter to request appointments or communicate with the virtual assistant, *id.* at ¶¶ 3, 10, 23-24, 26, 40, 66; that Tower acknowledges the Meta Pixels on its website capture both the characteristics and content of all visitors' interactions and communications, *cf*. Def. Mem. at p.3 [Doc. 43-2] *with* SAC at ¶¶ 10-11, 16, 23-24, 26, 66 [Doc. 40]; and that the information Tower's website collects allows Meta to identify everyone who interacts with it, SAC at ¶¶ 3, 12, 28.

On January 31, 2024, the Court scheduled an oral argument on Defendant's third Motion to Dismiss and presided over this argument on March 13, 2024. Jan. 31, 2024 Order [Doc. 56].

The Parties and the Court discussed many topics during this wide-ranging hearing, but the key question was quickly identified to be whether the Court would let Plaintiffs' claims progress to discovery without first requiring them to plead the specific details of their website use. Declaration of David J. Cohen ("Cohen Dec."), ¶ 3 (Exhibit A).

In support of its position that the Court should require these detailed allegations, Defendant cited cases where specific details of website use were required and, without offering any proof, claimed not to know what information Plaintiffs disclosed on its website.[1] Cohen Dec. at ¶4 (Exhibit A). Defendant repeatedly suggested that, should the Court find Plaintiffs' allegations deficient, it should dismiss the SAC with prejudice instead of allowing another amendment because: "if they had the specifics, they would have provided them by now," or "if Plaintiffs could have provided detailed allegations about their website use, they would have done it by now." *Id.* at ¶ 6.

Plaintiffs responded that requiring them to plead detailed allegations about their medical communications on Tower's website would be inconsistent with the Health Insurance Portability and Accountability Act of 1996 ("HIPPA"), which protects all personally identifiable health information regardless of content (*e.g.,* an individual's IP address or medical records) or subject (*e.g.,* a bunion or breast cancer). *Id.* at ¶¶ 7-8. Plaintiffs also suggested that, as a matter of public policy, the Court should not require them to publicly disclose in a pleading the same medical information HIPPA prohibits hospitals from disclosing. *Id*. Plaintiffs were not asked to explain the specific details they might plead if given the opportunity to file another complaint or told their

[1] Defendant's stated purpose in requiring Plaintiffs to specifically plead the details of their website interactions was to "confirm that pixels were installed on the pages Plaintiffs viewed." However, Defendant offered nothing to show that Meta Pixels exist only on certain pages of its website, or that it does not already know what pages Plaintiffs viewed from the data available to it. *Id.* at ¶ 5.

claims would be denied with prejudice unless they did so, either during the hearing or otherwise. *Id.* at ¶ 8. Moreover, Plaintiffs repeatedly refuted Defendant's unsupported suggestion about not being able to provide facts describing their interactions with Defendant's website or the information that Defendant's website transmitted to Meta. *Id.* Plaintiffs explained they had not yet pled these facts because they believed doing so was inconsistent with the principles behind HIPPA, would set a bad precedent for other similar cases, and because the Court had not yet ordered them to do so. *Id*.

On April 24, 2024, despite acknowledging that "plaintiffs' general concern is not frivolous," this Court entered a Memorandum Opinion granting Defendant's Motion to Dismiss and dismissing all three of Plaintiffs' claims with prejudice. Apr. 24, 2024 Memorandum, p. 1, 14 [Doc. 70]. This decision embodies two legal errors. First, the Court erred in finding that "providing further leave to amend would be futile," because no record evidence establishes that Plaintiffs are (or would be) unable to plead specific facts about their use of Defendant's website. *Id*. Second, the Court erred in representing that dismissing Plaintiffs' claims with prejudice is somehow "consistent" with *Murphy v. Thomas Jefferson University Hosp., Inc*., Apr. 24, 2024 Memorandum at pp. 8, 10-12 [Doc. 70], a case in which Judge Schiller granted the defendant's motion to dismiss but also "granted [plaintiffs] leave to further amend their Amended Complaint to allege enough facts to state their claims." *Murphy*, 2023 WL 7017734, *8 (E.D. Pa. Oct. 10, 2023). Importantly, in *Murphy*, the plaintiff filed a second amended complaint after receiving the court's guidance about deficiencies in its original pleading, and the sufficiency of these revised allegations has not yet been resolved. *See Murphy*, E.D. Pa. Case 22-cv-4674 (docket entries reflecting pending decision on defendant's renewed motion to dismiss since Feb. 15, 2024).

## II. LEGAL STANDARD

Local Rule 7.1(g) permits parties to seek reconsideration of judicial rulings. *See* E.D. Pa. L.R. 7.1(g); *Williams v. City of Philadelphia Off. of Sheriff*, 2023 WL 2139824, *2 (E.D. Pa. Feb. 21, 2023); *Azer Sci. Inc. v. Quidel Corp.*, 2023 WL 289696, *2 (E.D. Pa. Jan. 18, 2023). The purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." *Cockerill v. Corteva, Inc.*, 2023 WL 5672833, *1 (E.D. Pa. Sept. 1, 2023); *Rivera v. U.S.*, 2023 WL 4826751, *3 (E.D. Pa. July 27, 2023). A motion for reconsideration *should be granted* where the moving party shows the need to correct clear error of law or prevent manifest injustice. *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 678 (3d Cir. 1999); *Belfi v. Radius Bancorp*, 2022 WL 329564, *1 (E.D. Pa. Feb. 2, 2022).

## III. ARGUMENT

### A. The New Plaintiff-Specific Facts Alleged In The Third Amended Complaint Demonstrate That Allowing Leave To Amend Would Not Have Been Futile

In its Memorandum Opinion, this Court dismissed Plaintiffs' ECPA, negligence, and privacy claims because it found Plaintiffs' Second Amended Complaint did not provide "specific examples of what HIPAA-protected information from plaintiffs was transferred to Meta." Apr. 24, 2024 Memorandum at p. 7 [Doc. 70].[2] The Court proceeded to dismiss Plaintiffs' claims with

[2] *See id.* at p. 8 (the SAC "tells us nothing about the specific pages Mr. Santoro clicked on, his medical condition, or his history of medical care with Tower Health. So, we cannot determine what information Mr. Santoro actually communicated to Tower Health via his web browsing"), p. 10 (Plaintiffs' negligence theory "is critically undermined by his failure to adequately plead how Tower Health's public website supposedly collected and transmitted individually identifiable health information), p. 12 ("without any further factual matter describing the information, we hold that the characterization of the alleged (privacy) intrusion as highly offensive is conclusory and insufficient to state a claim").

prejudice, concluding: "[t]he facts simply aren't there, and therefore, amendment would be futile." *Id.* at p. 14. However, Plaintiffs are not aware of any record evidence, or any statements made at oral argument, that suggest (much less prove) they were unable to provide facts describing either their interactions with Defendant's website or the information about them that Defendant's website transmitted to Meta. Cohen Dec. at ¶ 8 (Exhibit A).

In their SAC, Plaintiffs pled that the Meta Pixel on Defendant's website intercepted and disclosed the contents of their communications on Tower Health's Website (*i.e.*, the URLs, buttons, links, pages, and tabs patients clicked and viewed) and the identifiers that uniquely identified them (*i.e.* their IP addresses, Facebook ID, cookie identifiers, device identifiers and account numbers). Since the Court has now held these allegations to be insufficiently specific, Plaintiffs have prepared the attached Third Amended Complaint ("TAC") that identifies the specific descriptive URLs Plaintiffs viewed on the Tower Health website that contain their personally identifiable health information and were intercepted by Defendant and disclosed to Meta. TAC, ¶¶ 289 (Santoro), 303 (Landis) (Exhibit B).[3] These URLs identify Plaintiffs as Tower Health patients because they logged into the Tower Health patient portal; show that Plaintiffs searched for Tower Health providers and locations within their zip code; reveal the names of Tower Health doctors with whom Plaintiffs scheduled appointments; and identify the specific Tower Health locations where Plaintiffs scheduled appointments. *Id.*

The TAC, drafted with the benefit of the Court's analysis, includes specific additional

[3] Plaintiffs have also filed a redlined version of their TAC showing all changes from their SAC, *See* Redlined TAC (Exhibit C).

details describing Plaintiffs' communications on Defendant's website.[4] For example, Plaintiffs have now pled that the identifiers Defendant's Website intercepted and disclosed to Meta with each communication they made include several specific types of IIHI protected by the HIPAA de-identification rule, including their: "Names… Medical record numbers… Account numbers… Device identifiers and serial numbers… Web Universal Resource Locators (URLs)… Internet Protocol (IP) address numbers… [and] Any other unique identifying number, characteristic, or code." TAC at ¶¶ 205, 260-273 (Exhibit B); *See* 45 C.F.R. § 164.514. The TAC pleads that Tower Health's Pixel disclosed at least five of these identifiers specific to them, specifically including their Facebook IDs. TAC at ¶¶ 9-10, 84-85, 87, 89, 126, 149-150, 155, 158, 160, 165, 168, 175, 265, 292, 304. *See, e.g., Hartley v. University Of Chicago Medical Center*, 2024 WL 1886909, *2 (N.D. Ill. Apr. 30, 2024) (denying defendant's renewed motion to dismiss because, in her amended complaint, "Plaintiff has now added allegations that are specific to herself").

The TAC also specifically identifies the substantive information Plaintiffs communicated on the Tower Health website about their medical conditions – namely Santoro's communications about sleep apnea and Landis' communications about irritable bowel syndrome and weight loss – that caused them to receive targeted spam and ads on Facebook and other social media sites relating to these same medical conditions. These improved allegations, consistent with the Court's analysis, plausibly suggest that Meta received these communications from Defendant and used them for the exact same commercial purposes Plaintiffs have described. TAC at ¶¶ 294, 307.

All these allegations, taken together and accepted as true, plausibly describe how

---

[4] Plaintiffs TAC also includes an additional 230 paragraphs that enhance the specificity of their individual allegations by explaining the functionality of Tower Health's Pixels and identifying the precise information these tracking tools collect and disclose to Meta. *See* TAC ¶¶ 9-18, 38-182, 200-248, 260-285

Defendant used Meta Collection Tools to intercept specific, statutorily protected, health information from Plaintiffs' communications on its website and disclose this information to Meta for commercial benefit. These allegations also plainly demonstrate that allowing Plaintiffs leave to amend their Complaint following Defendant's third Motion to Dismiss would not have been futile.

**B. Relevant Authority Does Not Support Dismissal With Prejudice**

The Federal Rules of Civil Procedure provide: "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). *See Gillman v. AAA Mid-Atl. Ins. Group*, 2024 WL 1718067, at *2 (E.D. Pa. Apr. 22, 2024) (leave to amend is appropriate where "it is possible [the plaintiff] could plead additional facts to support a claim"); *Gok v. United States*, 2024 WL 1536738, *4 (E.D. Pa. Apr. 9, 2024) (same).

In this Court, claims are typically not dismissed with prejudice unless they are proven to be "highly speculative, vague, and implausible," and/or the plaintiff has been advised of a specific pleading deficiency and given at least one chance to correct it. *See e.g., Kane v. Experian*, 2024 WL 1975463, *3 (E.D. Pa. May 3, 2024) (claims dismissed with prejudice after second attempt to replead following guidance from court); *Gok*, 2024 WL 1536738 at *4 (claims dismissed with prejudice after 14 attempts to replead); *Ellis v. Pennsylvania*, 2024 WL 1252831, *3 (E.D. Pa. Mar. 22, 2024) (claims dismissed with prejudice after "multiple attempts" to replead); *Gordon v. LM Gen. Ins. Co.*, 2023 WL 2975869, *4 (E.D. Pa. Apr. 17, 2023) (claims dismissed with prejudice after court "offered guidance on the types of facts then available to be pleaded, and gave leave to amend"); *Harrison-El v. Gaffney*, 2022 WL 16857016, *3 (E.D. Pa. Nov. 9, 2022) (dismissing claims with prejudice after court "provided guidance with respect to the deficiencies in the original Complaint").

Against this backdrop, this Court erred in dismissing Plaintiffs' claims with prejudice in this case both because no record facts suggested that Plaintiffs' claims were so "speculative, vague, or implausible" as to be incapable of correction and because it had not previously provided any guidance about perceived deficiencies in Plaintiffs' pleading. *See* Apr. 24, 2024 Memorandum, at p. 1 ("plaintiffs' general concern is not frivolous") [Doc. 70]; Cohen Dec. at ¶ 8 (Plaintiffs repeatedly refuted Defendant's suggestion they were unable to provide facts describing their interactions with Defendant's website or information that Defendant's website transmitted to Meta) (Exhibit A).

**IV. CONCLUSION**

The Court's April 24, 2024 Memorandum Opinion extinguished all three of Plaintiffs' claims *with prejudice*. This result represents a clear error of law and is manifestly unjust for two reasons, namely that:

- the Court held that "providing further leave to amend would be futile" although no record evidence establishes that Plaintiffs are (or would be) unable to plead specific facts about their use of Defendant's website, Apr. 24, 2024 Memorandum at pp. 1, 14 [Doc. 70]; and

- the Court represented that dismissing Plaintiffs' claims with prejudice is "consistent" with the decision in *Murphy* although, in that case, Judge Schiller "granted [plaintiffs] leave to further amend their Amended Complaint to allege enough facts to state their claims," *cf.* Apr. 24, 2024 Memorandum at pp. 8, 10-12 [Doc. 70] *with Murphy*, 2023 WL 7017734, *8 (E.D. Pa. Oct. 10, 2023).

To correct these errors, and in recognition of Plaintiffs' demonstrated ability to plead the details of their communications on Defendant's website, Plaintiffs respectfully ask the Court to grant their proposed Order attached as Exhibit D and: vacate its April 24, 2024 Order [Doc. 71] to the extent it grants Defendant's Motion to Dismiss, and dismisses Plaintiffs' ECPA, negligence and privacy claims with prejudice; allow Plaintiffs to file their attached Third Amended Complaint, describing

"the nature of the personal information allegedly captured by the Meta Pixel" and providing "more factual details about the information captured by the Meta Pixel," Memorandum, pp. 1, 13 [Doc. 70]; and set a schedule for Defendant's responsive pleading.

Respectfully submitted,

Dated: May 8, 2024

*/s/ David J. Cohen*

David J. Cohen
STEPHAN ZOURAS LLP
604 Spruce Street
Philadelphia, PA 19106
(215) 873-4836
dcohen@stephanzouras.com

James B. Zouras
Michael Casas
STEPHAN ZOURAS LLP
222 W. Adams Street, Suite 2020
Chicago, IL 60606
(312) 233-1550
jzouras@stephanzouras.com
mcasas@stephanzouras.com

*Attorneys for Plaintiff*