IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PATRICK SANTORO, JESSICA LANDIS** : | **CIVIL ACTION** |
| : | |
| **v.** : | **NO. 22-4580** |
| : | |
| **TOWER HEALTH** : | |

## MEMORANDUM

**MURPHY, J.**                                                                                                   **November 13, 2024**

      This case is one of many questioning a hospital's use of the Meta Pixel tracking tool on its public website. But the issue before us now is how many chances a plaintiff gets to adequately plead its case. Here, plaintiffs filed three complaints. Tower Health responded to each in turn with a motion to dismiss. Over a month after oral argument, we dismissed plaintiffs' claims with prejudice based on the insufficiency of their factual allegations. We concluded that after three attempts, the facts simply weren't there and weren't coming.

      Plaintiffs now ask us to reconsider our decision to dismiss the claims without leave to amend. As we stated in our memorandum dismissing the claims, we recognize that this case invokes legitimate fears about the improper sharing of medical information — plaintiffs' concerns, in general, are not frivolous. But plaintiffs have not demonstrated that we ought to entertain allegations that could have been, but were not, alleged earlier. They wanted a resolution on the (third round of) pleadings, and that is what they got. We reach the same result whether examining our earlier ruling for legal error or under the more liberal standard of Rule 15. Plaintiffs' motion to reconsider is denied.

1

I.      BACKGROUND

Plaintiffs Patrick Santoro and Jessica Landis claim that defendant Tower Health used Meta Pixel software to illegally intercept and communicate their private health information for monetary gain.  They assert claims against Tower Health for violation of the Electronic Communications Privacy Act (Wiretap Act), negligence, and intrusion upon seclusion.  Because this is a motion for reconsideration, we assume the parties' familiarity with the factual allegations as outlined in plaintiffs' second amended complaint (SAC) and our memorandum dismissing the case.  DI 40, 70.[1]

Plaintiffs filed their initial class action complaint in this case on November 16, 2022.  DI 1.  Tower Health responded with its first motion to dismiss for failure to state a claim.  DI 25.  Among other points, Tower Health argued that plaintiffs "fail[ed] to allege that Tower acted with a criminal or tortious purpose" necessary for a Wiretap Act violation.  DI 25-1 at 15-16.  Tower Health also argued that plaintiffs failed to allege facts demonstrating a duty of care, *id.* at 18, and failed to provide a sufficient factual basis to conclude any alleged intrusion was highly offensive, *id.* at 21.

On March 3, 2023, plaintiffs filed their first amended complaint.  DI 28.  Tower Health filed their second motion to dismiss.  DI 35.  Tower Health argued that "Plaintiffs do not (and cannot) allege facts showing that the substance, purport, or meaning of their communications have been transmitted to a third party . . . .  Instead, Plaintiffs make bald assertions that personally identifiable health information is transmitted to Meta."  DI 35-2 at 18 (internal quotations omitted).  Regarding the negligence claim, they argued that the amended complaint "does not allege any facts identifying *specific* communications from *Plaintiffs* that were

---

[1] We adopt the pagination supplied by the CM/ECF docketing system.

2

purportedly sent to Meta," and "[m]ere conclusory allegations are not enough to establish that Tower violated any alleged duty of care." *Id.* at 21.  Tower Health further argued that plaintiffs "allege *no facts* that any of Tower's alleged conduct caused them 'mental suffering, shame or humiliation' or was otherwise 'highly offensive.'" *Id.* at 25.

      Plaintiffs sought leave to amend their complaint "to revise certain factual allegations, and add new factual allegations," which we granted.  DI 38-1 at 4; *see* DI 39.  Plaintiffs filed their SAC on May 30, 2023.  DI 40.  In its third motion to dismiss, Tower Health argued that "the overarching problem is that the SAC—like its predecessors—rests entirely on bare, conclusory allegations."  DI 43-2 at 10; *see id.* at 19 ("Plaintiffs make bald assertions that the URLs, buttons, links, pages, and tabs they viewed are 'individually-identifiable health information' that was transmitted to Meta.").  Plaintiffs responded that the SAC contains "detailed, extensive factual allegations."  DI 46 at 2.

      We held a 75-minute oral argument on Tower Health's motion to dismiss on March 13, 2024.  In its opening remarks to the court, Tower Health reiterated: "We still don't know basic information about what these plaintiffs say they did.  We don't know what website they visited . . . .  We don't know what pages plaintiffs have visited . . . .  We don't know if they searched anything."  DI 74 at 7; *see id.* at 8 ("And at this point, if they had the facts, we would know the facts.").  Tower Health argued that plaintiffs' failure to provide details about the contents of the shared information undermined the negligence claim because "Tower could have only breached the duty if they were sharing that personal identifiable health information."  *Id.* at 19.  When discussing the intrusion claim, Tower Health stated that "highly offensiveness is a stringent standard," and "[plaintiffs] certainly haven't told us what they searched, if anything."  *Id.* at 27.

      At the outset of plaintiffs' argument, we cautioned that "[y]our biggest problem is the

3

specificity of the pleadings." *Id.* at 31. Plaintiffs responded that they had not pled more specific facts not because they "don't know that information, which, of course, isn't true" but because, in their view, "it's not required." *Id.* at 36. They explained: "We don't believe that people who have had their personal health information improperly shared . . . should be forced to identify the very things that are the subject of the violation in public documents." *Id.* at 39. Plaintiffs offered to identify the specific medical conditions for which plaintiffs sought information if the court was "inclined to insist" that they do so. *Id.* at 51. We responded that the meaningful problem was not the specific condition, but the "extent and scope of the information." *Id.* at 52. Plaintiffs did not offer any additional facts in response.

Following oral argument, plaintiffs did not request leave to amend their complaint. Over a month later, on April 24, 2024, we issued an order dismissing plaintiffs' claims with prejudice. DI 71. In the decision, we explained that plaintiffs' failure to describe specific HIPAA-protected information that was transmitted to Meta undermined their claims that Tower Health intercepted communications for the purpose of committing a criminal or tortious act in violation of the Wiretap Act; that Tower Health had a duty to protect sensitive health information and breached that duty; and that Tower Health committed an intrusion that was highly offensive. DI 70. We concluded that amendment would be futile. *Id.* at 14.

Fourteen days later, Plaintiffs filed a motion for reconsideration with a proposed third amended complaint (TAC). DI 73. They claim that the dismissal order included two legal errors by (1) "finding that 'providing further leave to amend would be futile'" and (2) "representing that dismissing [p]laintiffs' claims with prejudice is somehow 'consistent' with *Murphy v. Thomas Jefferson University Hosp., Inc.*" DI 73 at 8. Plaintiffs' proposed TAC includes facts that were not alleged in their three prior complaints, including the URLs that plaintiffs allegedly

4

visited on Tower Health's website, more details about the type and transmission of personal identifiers that Tower Health allegedly disclosed to Meta, and the health conditions for which plaintiffs sought information on Tower Health's website. *See* DI 73 at 10-11; DI 73-2 at ¶¶ 9-10, 84-85, 87, 89, 126, 149-150, 155, 158, 160, 165, 168, 175, 265, 289, 292, 294, 303, 304, 307. Tower Health responds that the order did not embody a clear error of law or fact by denying leave to amend; the order correctly determined that amendment would be futile; and that dismissal was consistent with *Murphy*. DI 76. In their reply, plaintiffs argue that they were not on notice of the deficiencies in their complaint, and the TAC includes sufficiently specific allegations. DI 77. They clarify that they seek reconsideration based on legal error, not newly discovered evidence. *Id.* at 3.

## II.   STANDARD OF REVIEW

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985); *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (internal quotations omitted). A party seeking reconsideration must establish at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

Rule 15 requires a district court to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Despite this liberal pleading philosophy, a court can deny leave to amend for reasons such as undue delay, bad faith, repeated failure to cure deficiencies in previous amendments, undue prejudice to the opposing party, and futility of amendment. *Foman*

*v. Davis*, 371 U.S. 178, 182 (1962); *see Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008) ("[A] district court must permit a curative amendment unless such an amendment would be inequitable or futile."). Leave to amend is futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *see* Fed. R. Civ. P. 12(b)(6).

**III.   DISCUSSION**

**A.   Reconsideration is not warranted based on denial of leave to amend.**

Plaintiffs first argue that denial of leave to amend constituted legal error because the case record did not establish that they were unable to plead sufficient facts, and the proposed TAC itself demonstrates otherwise. DI 73 at 9-11. Tower Health responds that there was no legal or factual error because plaintiffs were repeatedly put on notice of the factual deficiencies in their complaint, and even if the new facts in the proposed TAC are considered, amendment is still futile.[2] DI 76.

"The scope of a motion for reconsideration . . . is extremely limited." *Blystone v. Horn,* 664 F.3d 397, 415 (3d Cir. 2011). We agree with courts in this district that "reconsideration should be granted sparingly because of the interests in finality and conservation of scarce judicial resources." *Pennsylvania Ins. Guar. Ass'n v. Trabosh*, 812 F. Supp. 522, 524 (E.D. Pa. 1992); *see Williams v. City of Philadelphia Office of Sheriff*, No. 17-2697, 2023 WL 2139824, at *2

---

[2] Tower Health also argues that there can be no factual error "where the facts were never presented." DI 76 at 15. Plaintiffs reply that this argument mischaracterizes their motion for reconsideration as based on newly discovery evidence. *See* DI 77 at 3 (clarifying that plaintiffs do not seek reconsideration based on newly discovered evidence). To be clear, we understand plaintiffs' motion to assert legal error, not newly discovered evidence.

(E.D. Pa. Feb. 21, 2023); *Tomasso v. Boeing Co.*, No. 03-4220, 2007 WL 2458557, at *2 (E.D. Pa. Aug. 24, 2007).

In line with this interest in finality, a proper motion to reconsider is not an attempt at a "second bite at the apple." *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995); *see OR v. Hutner*, 576 F. App'x 106, 110 (3d Cir. 2014) ("Appellants' motion for reconsideration . . . is an attempt, again . . . to relitigate the District Court's dismissal of the complaint . . . ."). It is not an avenue to "attempt a new approach or correct mistakes" or to "argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *Calhoun v. Mann*, No. 08-458, 2009 WL 1321500, at *1 (E.D. Pa. May 12, 2009) (internal quotations omitted); *see Adlife Marketing & Communications Co., Inc. v. Karns Prime and Fancy Food, Ltd.*, No. 21-2074, 2023 WL 179840, at *5 (3d Cir. Jan. 13, 2023) (affirming denial of motion for reconsideration where "the declarations and arguments presented in support of [plaintiff's] motion could have been raised prior to the entry of judgment in this action"); *E.E.O.C. v. Dan Lepore & Sons Co.*, No. 03-cv-5462, 2004 WL 569526, at *2 (E.D. Pa. Mar. 15, 2004) ("Because [plaintiff] simply asks this Court to consider arguments that could have previously been asserted, [plaintiff] fails to meet the standard for granting a motion for reconsideration.") (internal quotations omitted); *Drysdale v. Woerth*, 153 F. Supp. 2d 678, 683 (E.D. Pa. 2001) (declining to "sift through new evidence that, although in existence at the time of trial, was never admitted").

Plaintiffs' motion relies on facts that could have been pled much earlier. Plaintiffs had ample notice that their description of the personal health information allegedly intercepted by Tower Health lacked necessary detail. Tower Health repeatedly raised this point in their three motions to dismiss. *See, e.g.*, DI 25-1 at 7 ("[T]he Complaint wholly lacks factual allegations

7

that would support Plaintiffs' conclusion that any of their patient or health information was transmitted to Meta."); DI 35-2 at 18 ("Plaintiffs make bald assertions that "personally-identifiable health information" is transmitted to Meta"); *id.* at 21 ("[T]he Amended Complaint does not allege any facts identifying *specific* communications from *Plaintiffs* that were purportedly sent Meta.") (emphasis in original); DI 43-2 at 10 ("They do not plead any facts supporting their claim that any "contents" of the communications were intercepted. . . ."); *id.* at 19 ("Plaintiffs make bald assertions that the URLs, buttons, links, pages, and tabs they viewed are "individually-identifiable health information" that was transmitted to Meta."); *id.* at 21 ("Tower could not have breached a duty of confidentiality because Plaintiffs never disclosed individually-identifiable health information.").

The focal point of oral argument was plaintiffs' lack of factual specificity when describing the HIPAA-protected information that forms the basis for their claims. *See* DI 74 at 7 ("We don't know if they searched anything. There's no mention of search terms here. There's just hypotheticals and things that . . . could potentially happen."); *id.* at 37 ("[Y]ou need to paint a picture of what is the 'information' — to use the word from HIPAA, right? What is the information that Facebook got? What is that information?"); *id.* at 52 ("I don't know from the complaint what the information is and I'm struggling with it.").

Courts around the country were dismissing similar Meta Pixel claims for failure to adequately describe the HIPAA-protected information. *See, e.g.*, *Kurowski v. Rush System for Health*, 683 F. Supp. 3d 836, 843-44 (N.D. Ill. 2023) (dismissing a Wiretap Act claim grounded in "vague" allegations); *Cousin v. Sharp*, 681 F. Supp. 3d 1117, 1128 (S.D. Cal. 2023) ("Plaintiffs have not provided sufficient facts to support the claim that their medical information was disclosed by [defendant]."). Still, plaintiffs did not include sufficient facts in their SAC and,

even after oral argument, did not request leave to amend their complaint.  Now — only after we dismissed their claims with prejudice — they assert new facts to support their argument that leave to amend was not futile.  *See* DI 73 at 9-12.

Against this backdrop, we conclude that it was not error to deny leave to amend.[3] When we dismissed plaintiffs' complaint, they had already amended it twice.  They were on notice that the complaint insufficiently described the HIPAA-protected information at issue, and, either in oral argument or a subsequent request for leave to amend, chose to withhold the necessary facts.  At oral argument, the only specific information plaintiffs offered to provide was the nature of the health conditions ("a torn ACL or a heart attack or a bunion") for which plaintiffs sought information on Tower Health's website.[4]  DI 74 at 51.  They immediately qualified that offer by emphasizing that they "don't see any reason in the law . . . why that would be necessary."  *Id.*  We stated then, and still find today, that identifying a specific health condition "minimize[ed] the issue."  *Id.*  Without more, we concluded that any further amendment — whether because plaintiffs did not have the facts or simply did not want to provide them — would be futile.  DI 70 at 14.

Plaintiffs argue we committed legal error by denying leave to amend because we "had not previously ordered the Plaintiffs to plead their website use more specifically."  DI 73 at 1; *see id.* at 8 ("Plaintiffs explained they had not yet plead these facts because . . . the Court had not yet ordered them to do so.").  Yet the Third Circuit has declined to reward such a "wait-and-see"

---

[3] Although we appreciate why plaintiffs advance their latest round of amendments, we take no position on whether they would be enough to defeat Tower Health's motion.

[4] Plaintiffs' general statement that it "isn't true" that they "don't know that information," without more, did little to address their failure to demonstrate — over the course of three pleadings and an oral argument — that they possessed, and would be willing to provide, allegations of the requisite specificity.  DI 74 at 36.

9

approach to pleading. *Jang v. Boston Scientific Scimed, Inc.*, 729 F.3d 357, 368 (3d Cir. 2013). It is plaintiffs' job, not ours, to determine the content of their complaint. Like other district courts, we decline to grant a motion for reconsideration where the party purposefully waits for a court's ruling to correct discernable errors. *See United States ex rel. Sirls v. Kindred Healthcare*, 536 F. Supp. 3d 1, 6 (E.D. Pa. 2021) (denying a motion for reconsideration where relator relied on a wait-and-see approach "at his own peril"); *Sanlu Zhang v. Royal Caribbean Cruises, Ltd.*, No. 19-20773, 2020 WL 1472302, at *2 (S.D. Fl. 2020) (denying a motion for reconsideration where the plaintiff "sat back and waited to see if the Court would let his pleading fly" and, only after dismissal, "came up with a litany of new facts").

We are not persuaded by plaintiffs' argument, resting solely on nonprecedential authority, that "claims are typically not dismissed with prejudice unless they are . . . highly speculative, vague, and implausible, and/or the plaintiff has been advised of a specific pleading deficiency and given at least one chance to correct it." DI 73 at 12 (internal quotations omitted). Of the five decisions plaintiffs cite for this point, three involved *pro se* litigants.[5] *See Kane v. Experian*, No. 23-cv-03526, 2024 WL 1975463 (E.D. Pa. May 3, 2024); *Gok v. United States*, No. 22-4838, 2024 WL 1536738 (E.D. Pa. Apr. 9, 2024); *Ellis v. Pennsylvania*, No. 23-2450, 2024 WL 1252831 (E.D. Pa. Mar. 22, 2024). The other two cases do little to support a finding of legal error. *Gordan v. LM Insurance Co.* involved dismissal of the plaintiff's complaint with prejudice on res judicata grounds — a situation we do not confront here. No. 23-479, 2023 WL 2975869, at *3 (E.D. Pa. Apr. 17, 2023). Furthermore, like the court in *Gordon*, we did in fact provide guidance on the "types of facts . . . available to be pleaded" — through oral argument.

---

[5] Pro se litigants are held to a more liberal pleading standard than plaintiffs represented by counsel. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

*Id.* at *4.  Plaintiffs did not use that opportunity to move for leave to amend.  The court in *Harrison-El v. Gaffney* dismissed a third amended complaint with prejudice when the plaintiff "ha[d] already been given an opportunity to cure the defects in his claims and ha[d] been unable to do so."  No. 20-cv-5978, 2022 WL 16857016, at *3 (E.D. Pa. Nov. 9, 2022).  Here, plaintiffs had three opportunities to cure defects in their complaint.  Plaintiffs chose to stand their ground on the law; they got their answer; and justice did not require further amendment.  Denying leave to amend was not a legal error.

### B. Reconsideration is not warranted due to our reliance on *Murphy*.

Plaintiffs argue that we committed legal error by representing that dismissal with prejudice was consistent with *Murphy v. Thomas Jefferson University Hosp., Inc.*, No. 22-4674, 2023 WL 7017734 (E.D. Pa. Oct. 10, 2023).  We merely represented that *Murphy* was consistent with our decision to dismiss plaintiffs' claims.  *See* DI 70 at 8, 11-12.  *Murphy* did not control our decision to dismiss the claims *with prejudice*, and we did not deny leave to amend because doing so was consistent with *Murphy*.[6]  There is no legal error.

### C. Even under Rule 15, there are reasons to deny leave to amend.

Plaintiffs move for reconsideration pursuant to Local Rule 7.1, which provides that "[m]otions for reconsideration . . . shall be served and filed within fourteen (14) days after the entry of the order concerned, other than those governed by Federal Rule of Civil Procedure 59(e)."  L. Civ. R. 7.1(g); DI 73 at 9.  However, plaintiffs ask us to reconsider a dismissal with prejudice, which is considered a final judgment.  *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 230 (3d Cir. 2011) ("After judgment dismissing the complaint is entered, a party may seek

---

[6] However, as Tower Health points out, there are differences between this case and *Murphy* that render our decision to deny leave to amend not necessarily inconsistent with *Murphy*.  *See* DI 76 at 18.

11

to amend the complaint (and thereby disturb the judgment) only through Federal Rules of Civil Procedure 59(e) and 60(b).") (internal quotations omitted); *cf. Manze v. State Farm Ins. Co.,* 817 F.2d 1062, 1064 (3d Cir. 1987) ("Because the district court dismissed [plaintiff's] complaint with prejudice, we possess jurisdiction to hear this appeal. . . ."). We therefore recognize that their motion is more properly considered a motion to amend or alter a final judgment under Rule 59(e).

The Third Circuit has stated that after final judgment is entered, "the liberality of [Rule 15] is no longer applicable . . . . At that stage, it is Rules 59 and 60 that govern the opening of final judgments." *Ahmed v. Dragovich*, 297 F.3d 201, 207-08 (3d Cir. 2022). Nonetheless, where a timely Rule 59(e) motion is filed with a request for leave to amend, "the Rule 15 and 59 inquires turn on the same factors." *Burtch*, 662 F.3d at 230; *Adams v. Gould*, 739 F.2d 858, 864 (3d Cir. 1984).

Plaintiffs did not file their motion to reconsider under Rule 59, nor did they expressly move for leave to amend under Rule 15, although that is the gist of what they are after. Even applying the more "liberal" Rule 15 standard to their motion and proposed TAC, we would deny leave to amend. "The Rule 15(a) factors include undue delay, bad faith, prejudice, or futility." *Burtch*, 662 F.3d at 230-31 (internal quotations omitted). "The question of undue delay . . . requires that we focus on the plaintiff's motives for not amending their complaint to assert this claim earlier." *Gould*, 739 F.2d at 868. This "includes consideration of whether new information came to light or was available earlier to the moving party." *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 280 (3d Cir. 2004). "Delay may become undue when a movant has

had previous opportunities to amend a complaint." *Cureton v. Nat'l Collegiate Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

The Third Circuit has repeatedly affirmed denials of leave to amend where the proposed amended complaint included facts or arguments that could have been pled earlier. *See Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F.3d 70, 74 (3d Cir. 1994) (affirming denial of leave to amend because "three attempts at a proper pleading is enough" and "[plaintiff] is not seeking to add claims it inadvertently omitted from its prior complaints or which it did not know about earlier"); *Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644, 654 (3d Cir. 1998) (affirming denial of leave to amend where "plaintiff's proposed Second Amended Complaint primarily seeks to replead facts and arguments that could have been pled much earlier in the proceedings"), *abrogated on other grounds by Forbes v. Eagleson*, 228 F.3d 471, 483 (3d Cir. 2000); *Cureton*, 252 F.3d at 273-74 (affirming denial of leave to amend where district court found that "the factual information on which the proposed amendment relied was known almost two-and-a-half years before plaintiffs' sought leave to amend" and "the only real reason advanced by plaintiffs for the substantial lapse in time was plaintiff's misplaced confidence in their original . . . theory").

Plaintiffs filed their motion for reconsideration and proposed TAC nearly a year-and-a-half after their initial complaint. *See* DI 1; DI 72. The proposed TAC includes additional facts that were not alleged in the SAC. For the first time, plaintiffs identify the URLs that they allegedly viewed on Tower Health's website, DI 73-2 at ¶¶ 289, 303, and the health conditions about which plaintiffs communicated on the website, *id.* at ¶¶ 294, 307. They describe in more detail the types of personal identifiers that Tower Health allegedly disclosed to Meta and the information contained therein. *Id.* at ¶¶ 9-10, 84-85, 260-73. Plaintiffs do not claim that they

13

were unable to plead these facts much earlier in these proceedings, and there is no apparent reason why they could not have.  They had three opportunities to plead their complaint, and after each one, Tower Health filed a motion to dismiss and identified specific factual inadequacies.  At oral argument, we identified the exact problem that eventually resulted in dismissal of their complaint.  We see no reason for plaintiffs' delay other than "misplaced confidence" in their legal strategy.[7]  *Cureton*, 252 F.3d at 274.

Allowing amendment here would reward a strategy in which plaintiffs "pursue a case to judgment and then, if they lose . . . reopen the case by amending the complaint to take account of the court's decision."  *James v. Watt,* 716 F.2d 71, 78 (1st Cir. 1983) (Breyer, J.).  This practice undermines our interests in judicial economy and finality of litigation.  *See id.*; *Cureton*, 252 F.3d at 273.  We may permit such a practice when the moving party has offered an adequate explanation for their delay, but that does not exist here.  *See Arthur v. Maersk, Inc.,* 434 F.3d 196, 204 (3d Cir. 2006) ("When a party fails to take advantage of previous opportunities to

---

[7] Plaintiffs' privacy-based objections are not an adequate reason for withholding facts until this juncture.  *See* DI 74 at 39.  As stated in our dismissal memorandum, there are mechanisms that allow plaintiffs to proceed anonymously or provide sensitive information under seal.  DI 70 at 9.  Plaintiffs could have taken advantage of these mechanisms prior to dismissal.  Notably, plaintiffs did not move to file their motion for reconsideration or proposed TAC under seal.

14

amend, without adequate explanation, leave to amend is properly denied."). We deny leave to amend.

## IV.   CONCLUSION

For the foregoing reasons, we deny plaintiffs' motion for reconsideration. We also deny their request to file the proposed TAC. An appropriate order follows.